DRAPER ET AL. *v.* WASHINGTON ET AL.

No. 201.  Argued January -16, 1963.—Decided March 18, 1963.

*Charles F. Luce,* by appointment of the Court, 371 U. S. 805, argued the cause and filed briefs for petitioners.

*John J. Lally* argued the cause for respondents. With him on the brief was *Joseph J. Rekofke.*

MR. JUSTICE GOLDBERG delivered the opinion of the Court.

Certiorari was granted in this case, 370 U. S. 935, in order that the Court might consider whether the State of Washington's rules governing the provision of transcripts to indigent criminal defendants for purposes of appeal were applied in this case so as to deprive petitioners of rights guaranteed them by the Fourteenth Amendment.

This Court has dealt recently with the constitutional rights of indigents to free transcripts on appeal in *Griffin* v. *Illinois,* 351 U. S. 12, and *Eskridge* v. *Washington State Board of Prison Terms and Paroles,* 357 U. S. 214. The principle of *Griffin* is that "[d]estitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts," 351 U. S., at 19, a holding restated in *Eskridge* to be "that a State denies a constitutional right guaranteed by the Fourteenth Amendment if it allows all convicted defendants to have appellate review except those who cannot afford to pay for the records of their trials," 357 U. S., at 216. In *Eskridge* the question was the validity of Washington's long-standing procedure whereby an indigent defendant would receive a stenographic transcript at

public expense only if, in the opinion of the trial judge, "justice will thereby be promoted." *Id.*, at 215. This Court held *per curiam* that, given Washington's guarantee of the right to appeal to the accused in all criminal prosecutions, Wash. Const., Art. I, § 22 and Amend. 10, "[t]he conclusion of the trial judge that there was no reversible error in the trial cannot be an adequate substitute for the right to full appellate review available to all defendants in Washington who can afford the expense of a transcript," *id.*, at 216, and remanded the cause for further proceedings not inconsistent with the opinion. In response, in *Woods* v. *Rhay*, 54 Wash. 2d 36, 338 P. 2d 332 (1959), a case which was remanded by this Court for reconsideration in light of *Eskridge* two weeks after that case was decided, 357 U. S. 575, the Supreme Court of Washington formulated a new set of rules to govern trial judges in passing upon indigents' requests for free stenographic transcripts:

"1. An indigent defendant in his motion for a free statement of facts must set forth:

"a. The fact of his indigency

"b. The errors which he claims were committed; and if it is claimed that the evidence is insufficient to justify the verdict, he shall specify with particularity in what respect he believes the evidence is lacking. (The allegations of error need not be expressed in any technical form but must clearly indicate what is intended.)

"2. If the state is of the opinion that the errors alleged can properly be presented on appeal without a transcript of all the testimony,

"a. it may make a showing of what portion of the transcript will be adequate, or

"b. if it believes that a narrative statement will be adequate, it must show that such a statement is or will be available to the defendant.

"3. The trial court in disposing of an indigent's motion for a statement of facts at county expense shall enter findings of fact upon the following matters:

"a. The defendant's indigency

"b. Which of the errors, if any, are frivolous and the reasons why they are frivolous

"c. Whether a narrative form of statement of facts will be adequate to present the claimed errors for review and will be available to the defendant; and, if not

"d. What portion of the stenographic transcript will be necessary to effectuate the indigent's appeal.

"4. The trial court's disposition of the motion shall be by definitive order." 54 Wash. 2d, at 44–45, 338 P. 2d, at 337.

It is the application of these rules which is asserted by petitioners in the present case to be inconsistent with their constitutional rights as declared in the *Griffin* and *Eskridge* cases. Petitioners, who are concededly indigent, were each convicted of two counts of robbery by a jury and sentenced to two consecutive 20-year terms after a three-day trial ending on September 14, 1960, during which they were represented by court-appointed counsel. Their motions for new trials were denied. On October 20, acting *pro se,* they filed timely notices of appeal from the judgments of conviction, and then filed identical motions requesting the trial judge to order preparation of a free transcript of the record and statement of facts.[1] Drawn

---

[1] Washington practice refers to copies of the various documents filed with the clerk of the trial court as the "transcript of the record," Rule 44 of the Rules on Appeal, and to the court reporter's transcription of trial proceedings as the "statement of facts," Rule 35 of the Rules on Appeal. In accordance with common usage, the latter will often be referred to herein as the "transcript" and the "stenographic transcript."

inartistically, these requests asserted petitioners' indigency and then set forth 12 allegations of error in the trial, relating to admission of testimony and exhibits, perjured and self-contradictory testimony, prejudice of the trial judge in the conduct of the trial, failure to enforce the rule as to exclusion of witnesses, and failure of the evidence to establish the elements of the crime charged. Each concluded that "[u]nless Defendant is provided with a transcript and statement of facts at the county expense, he will be unable to prosecute this appeal."

Petitioners' motions were heard on November 28 by the judge who had presided at the jury trial. Petitioners were present at the hearing, having been brought from the State Penitentiary where they were and still are incarcerated. Although they no longer wished the aid of counsel, the judge, in accordance with a statement in *Woods* v. *Rhay*,[2] directed trial counsel to speak in petitioners' behalf. Counsel attempted, as best he could from his recollection of a trial which had occurred two and one-half months earlier, to elaborate upon the specifications of error in petitioners' motions. The objections to exhibits, he stated, related to a gun introduced against petitioner Draper, and a jacket, claimed to have been found with money in it, introduced as belonging to petitioner Lorentzen. Counsel explained at length that he regarded the foundation laid for introducing these items to have been extremely weak, and that receipt of the evidence on such a slim foundation was prejudicial. He suggested that petitioner Draper had been identified only by an alleged accomplice, Jennings, whose testimony was also contradictory and perjurious. Counsel also argued that

---

[2] "Where court-appointed counsel has represented the defendant at the trial, his services should be made available to the defendant for the purpose of presenting the motion." 54 Wash. 2d, at 44, n. 3, 338 P. 2d, at 337, n. 2.

the prosecution had failed to prove both the existence of the corporation which the indictment described as owning one of the robbed motels, and the possessory right of its agent to the money taken. "In my opinion," he said, "those two omissions are very important, if not fatal in this case." Further, counsel referred to petitioners' contention that two witnesses were improperly allowed to sit in the courtroom prior to testifying, and said that he had no personal knowledge of the facts supporting the contention but that since defendants had invoked the exclusion-of-witnesses rule at trial there was perhaps something to the contention. Finally, counsel argued that petitioners' contention that the evidence was insufficient to sustain the conviction was, under *Woods* v. *Rhay* and analogous decisions of this Court governing the rights of federal prisoners, enough in itself to entitle them to a transcript.

Since petitioners had not desired counsel's assistance, petitioner Draper was allowed to argue when counsel finished. He stated in a layman's way what he believed were the trial errors, but when interrogated by the trial judge for supporting details he asserted his inability to give any without a transcript.

The prosecutor opposed the motion both by affidavit and by argument at the hearing. His affidavit summarized in several paragraphs his contrary interpretation of the evidence, which according to him plainly established the defendants' guilt. In his argument he undertook to refute each of petitioners' assignments of error. He contended, therefore, that petitioners' motions for free transcripts and statements of facts should be denied because "there is nothing here to support any substantial claim of error whatsoever."

The trial judge, upon conclusion of the prosecutor's argument, reviewed petitioners' assignments of error and indicated orally that he would deny their motions. On

December 12 he entered an order, coupled with formal findings of fact and conclusions of law, in which he concluded

"That the assignments of error as set out by each defendant are patently frivolous; that the guilt of each defendant as to each count of Robbery was established by overwhelming evidence, and that accordingly the furnishing of a statement of facts would result in a waste of public funds."

His findings summarized in six paragraphs the facts which he thought had been proven at the three-day trial. This summary constituted only the trial judge's conclusions about the operative facts, without any description whatsoever of the evidence upon which those conclusions were based. After stating these factual conclusions, the judge specifically rejected each of petitioners' 12 assignments of error with a summary statement—almost wholly conclusory—concerning each.

Petitioners sought review by certiorari of the trial court's order in the Supreme Court of Washington. Department One of that court quashed the writ, holding that the trial court had properly applied the principles of *Woods* v. *Rhay* and had correctly found the appeal to be frivolous. 58 Wash. 2d 830, 365 P. 2d 31. By the very nature of the procedure, the Supreme Court's ruling was made without benefit of reference to any portion of a stenographic transcript of the jury trial. Solely on the basis of the stenographic record of the hearing on the motion, the Supreme Court stated that "[i]t would serve no useful purpose to set forth . . . [the] evidence in detail," 58 Wash. 2d, at 832, 365 P. 2d, at 33, and instead purported to summarize the operative facts briefly, based entirely and uncritically on the trial judge's conclusions as to what had occurred. These conclusory statements, arrived at

without any examination of the underlying evidence, were then (inevitably, given the nature of the trial judge's conclusions) characterized as sufficient to show that all of the elements of the crime of robbery were established by the evidence.[3] The court concluded by briefly dealing with and rejecting petitioners' specific assignments of error, just as the trial judge had done.

Petitioners contend that the present Washington procedure for indigent appeals has not cured the constitutional defects disapproved in *Eskridge*. They argue that a standard which conditions effective appeal on a trial judge's finding, even though it be one of nonfrivolity instead of promotion of justice, denies them adequate appellate review. Under the present standard, just as under the disapproved one, they must convince the trial judge that their contentions of error have merit before they can obtain the free transcript necessary to prosecute their appeal. Failing to convince the trial judge, they continue, they are denied adequate appellate review because the Supreme Court then passes upon their assignments of error without consideration of the record of the trial proceedings, whereas defendants with money to buy a tran-

---

[3] The State Supreme Court twice declared that the defendants had not challenged the trial court's recollection of the evidence, apparently implying that defendants had abandoned any claims resting on insufficiency of or inconsistencies in the evidence. However, the record, including the briefs filed in the State Supreme Court, does not support this conclusion. Petitioners' *pro se* brief in the State Supreme Court, such as it was, was based on the broad proposition that under *Griffin* and *Eskridge* they were entitled to a transcript in order to appeal, a pointless contention if by so stating the argument they meant to waive the right to have the State Supreme Court consider some or possibly all of the underlying allegations of error. Their vigorous arguments at the hearing on the transcript motion were meaningless if they were willing to accept the prosecution's version of the facts. It should be noted, however, that the State Supreme Court did, notwithstanding its comments, consider petitioners' assignments of error.

script are allowed a direct appeal to the Supreme Court, which affords them full review of their contentions. The State argues that this difference in procedure is justifiable because it safeguards against frivolous appeals by indigents while guaranteeing them appellate review in cases where such review is even of potential utility.[4]

In considering whether petitioners here received an adequate appellate review, we reaffirm the principle, declared by the Court in *Griffin*, that a State need not purchase a stenographer's transcript in every case where a defendant cannot buy it. 351 U. S., at 20. Alternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise. A statement of facts agreed to by both sides, a full narrative statement based perhaps on the trial judge's minutes taken during trial or on the court reporter's untranscribed notes, or a bystander's bill of exceptions might all be adequate substitutes, equally as good as a transcript. Moreover, part or all of the stenographic transcript in certain cases will not be germane to consideration of the appeal, and a State will not be required to expend its funds unnecessarily in such circumstances. If, for instance, the points urged relate only to the validity of the statute or the sufficiency of the indictment

---

[4] The State also argues that in practical effect there is no difference at all between the rights it affords indigents and nonindigents, because a moneyed defendant, motivated by a "sense of thrift," will choose not to appeal in exactly the same circumstances that an indigent will be denied a transcript. We reject this contention as untenable. It defies common sense to think that a moneyed defendant faced with long-term imprisonment and advised by counsel that he has substantial grounds for appeal, as petitioners were here, will choose not to appeal merely to save the cost of a transcript. The State's procedure for indigents, therefore, cannot be justified as an attempt to equalize the incidence of appeal as between indigents and nonindigents.

upon which conviction was predicated, the transcript is irrelevant and need not be provided. If the assignments of error go only to rulings on evidence or to its sufficiency, the transcript provided might well be limited to the portions relevant to such issues. Even as to this kind of issue, however, it is unnecessary to afford a record of the proceedings pertaining to an alleged failure of proof on a point which is irrelevant as a matter of law to the elements of the crime for which the defendant has been convicted.[5] In the examples given, the fact that an appellant with funds may choose to waste his money by unnecessarily including in the record all of the transcript does not mean that the State must waste its funds by providing what is unnecessary for adequate appellate review. In all cases the duty of the State is to provide the indigent as adequate and effective an appellate review as that given appellants with funds—the State must provide the indigent defendant with means of presenting his contentions to the appellate court which are as good as those available to a nonindigent defendant with similar contentions.

Petitioners' contentions in the present case were such that they could not be adequately considered by the State Supreme Court on the limited record before it. The arguments about improper foundation for introduction of the gun and coat, for example, could not be determined on their merits—as they would have been on a nonindigent's appeal—without recourse, at a minimum, to the portions of the record of the trial proceedings relating to this point.[6] Again, the asserted failure of proof with

---

[5] For example, the State Supreme Court here held that, under Washington law, proof of the existence of the corporation robbed is unnecessary to a conviction for robbery, thus obviating the need for a record of the testimony relevant to this point.

[6] The Washington courts stated that the asserted lack of foundation went to the weight of the evidence and not to its admissibility. This conclusion, however, in contrast to the holding that the existence

respect to identification of the defendants and the allegations of perjury and inconsistent testimony were similarly impossible to pass upon without direct study of the relevant portions of the trial record. Finally, the alleged failure of the evidence to sustain the conviction could not be determined on the inadequate information before the Washington Supreme Court.

The materials before the State Supreme Court in this case did not constitute a "record of sufficient completeness," see *Coppedge* v. *United States,* 369 U. S. 438, 446, and p. 498, *infra,* for adequate consideration of the errors assigned. No relevant portions of the stenographic transcript were before it. The only available description of what occurred at the trial was the summary findings of the trial court and the counter-affidavit filed by the prosecutor. The former was not in any sense like a full narrative statement based upon the detailed minutes of a judge kept during trial. It was, so far as we know, premised upon recollections as of a time nearly three months after trial and, far from being a narrative or summary of the actual testimony at the trial, was merely a set of conclusions. The prosecutor's affidavit can by no stretch of the imagination be analogized to a bystander's bill of exceptions. The fact recitals in it were in most summary form, were prepared by an advocate seeking denial of a motion for free transcript, and were contested by petitioners and their counsel at the hearing on that motion.

By allowing the trial court to prevent petitioners from having stenographic support or its equivalent for presentation of each of their separate contentions to the

of the robbed corporation was irrelevant as a matter of law, necessarily depended upon an examination—never made—of the appropriate portions of the record to test whether the evidence claimed to establish the foundation was in fact sufficient to meet the threshold standard of admissibility.

appellate tribunal, the State of Washington has denied them the rights assured them by this Court's decisions in *Griffin* and *Eskridge*. The rules set out in *Woods* v. *Rhay* contemplate a procedure which could have been followed here to afford the petitioners what the Constitution requires. Thus, in accordance with those rules, the State could have endeavored to show that a narrative statement or only a portion of the transcript would be adequate and available for appellate consideration of petitioners' contentions. The trial judge would have complied with both the constitutional mandate and the rules in limiting the grant accordingly on the basis of such a showing by the State. What was impermissible was the total denial to petitioners of any means of getting adequate review on the merits in the State Supreme Court, when no such clog on the process of getting contentions before the State Supreme Court attends the appeals of defendants with money.

The Washington rules as applied here come to this: An indigent defendant wishing to appeal and needing a transcript to do so may only obtain it if the judge who has presided at his trial and has already overruled his motion for a new trial as well as his objections to evidence and to conduct of the trial finds that these contentions, upon which he has already ruled, are not frivolous. The predictable finding of frivolity is subject to review without any direct scrutiny of the relevant aspects of what actually occurred at the trial, but rather with examination only of what the parties argued at the hearing on the transcript motion and what the judge recalled and thereafter summarily found as to what went on at the trial.

This Court, in *Coppedge* v. *United States,* 369 U. S. 438, 446, dealt with similar vices in the federal courts by requiring that when a defendant denied leave to appeal *in forma pauperis* by the District Court applies to

the Court of Appeals for leave to appeal, that court, when the substance of the applicant's claims cannot be adequately ascertained from the face of his application (as in the present case), must provide a "record of sufficient completeness to enable him to attempt to make a showing that the District Court's certificate of lack of 'good faith' is in error and that leave to proceed . . . *in forma pauperis* should be allowed." Here, similarly, the Washington Supreme Court could not deny petitioners' request for review of the denial of the transcript motion without first granting them a "record of sufficient completeness" to permit proper consideration of their claims. Such a grant would have ensured petitioners a right to review of their convictions as adequate and effective as that which Washington guarantees to nonindigents. Moreover, since nothing we say today militates against a State's formulation and application of operatively nondiscriminatory rules to both indigents and nonindigents in order to guard against frivolous appeals, the affording of a "record of sufficient completeness" to indigents would ensure that, if the appeals of both indigents and nonindigents are to be tested for frivolity, they will be tested on the same basis by the reviewing court. Compare *Ellis* v. *United States,* 356 U. S. 674; *Coppedge* v. *United States, supra,* 369 U. S., at 447–448.

In *Eskridge* this Court held that "[t]he conclusion of the trial judge that there was no reversible error in the trial cannot be an adequate substitute for the right to full appellate review available to all defendants in Washington who can afford the expense of a transcript." 357 U. S., at 216. We hold today that the conclusion of the trial judge that an indigent's appeal is frivolous is a similarly inadequate substitute for the full appellate review available to nonindigents in Washington, when the effect of that finding is to prevent an appellate examination based upon

a sufficiently complete record of the trial proceedings themselves.

The judgment of the Washington Supreme Court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE WHITE, whom MR. JUSTICE CLARK, MR. JUSTICE HARLAN and MR. JUSTICE STEWART join, dissenting.

The Supreme Court of Washington in this case determined that the issues raised by petitioners in that court were without merit and frivolous. In my judgment petitioners were afforded an adequate appellate review upon a satisfactory record. Consequently, with all due deference, I dissent.

I.

The Court, as it should, *Griffin* v. *Illinois,* 351 U. S. 12, 20; *Eskridge* v. *Washington State Board,* 357 U. S. 214, 216; cf. *Johnson* v. *United States,* 352 U. S. 565; *Coppedge* v. *United States,* 369 U. S. 438, 446, carefully avoids requiring the State to supply an indigent with a stenographic transcript of proceedings in every case. It would permit the State to furnish an adequate record substantially equivalent to the transcript which could be purchased by an appellant with resources and would accept a narrative statement based upon the judge's notes or a bystander's bill of exceptions. By any of these standards articulated by the Court, however, I am quite unable to fathom why and in what respects the record placed before the Washington Supreme Court was not wholly satisfactory, just as the Washington Supreme Court determined that it was.

Following petitioners' conviction and the denial of the motion for a new trial, petitioners filed a motion before

the trial court setting forth their claimed errors and requesting a transcript for purposes of appeal. The State, opposing the request for a transcript, responded by presenting the evidence at the trial in a narrative form by affidavit of the prosecuting attorney. A hearing was held at which both the attorney who represented the petitioners at the trial and the petitioners themselves were free to challenge the accuracy of the State's narrative of the facts or to supplement it in any way. The statements and arguments of petitioners and their attorney at the hearing were included in the material before the Supreme Court and added considerably to the State's summary, as did the court's oral opinion and the colloquies between the court and petitioner Draper. Finally, the court, as it was required to do, entered findings of fact setting forth the evidence at the trial and ruling upon each error claimed by petitioners. The findings, as well as the court's statements during the conduct of the hearing, went substantially beyond the summary presented by the State and were expressly intended by the trial judge to set forth the "substance of the testimony" so that the matters relied upon by petitioners could be presented to the Washington Supreme Court.

We thus have a situation where the court, in good faith, utilizing its own knowledge and information about the trial and with the help of the State, the defendants and their counsel, in effect prepared and settled a narrative statement of the evidence for the use of the appellate court in passing upon the merits of the alleged errors. The record before the Washington Supreme Court contained not only the findings made by the trial judge after a hearing, but also everything said at the hearing by the defendants, by their attorney and by the prosecutor. Furthermore, briefs were filed in the Supreme Court of Washington and the court heard oral argument by appointed counsel.

If the Court would accept a narrative statement based upon the judge's notes, I am at a loss to understand why the above procedure does not satisfy the Court's own requirements, particularly when throughout this entire proceeding neither the petitioners nor their attorney challenged the accuracy of any statement in the summary prepared by the trial court and when every opportunity was given them to add to this record. While claiming generally that a transcript was required and in effect insisting that the jury should not have believed the evidence, not once did the petitioners or their attorney in the trial court or in this Court indicate in what particulars the record made by the judge with the participation of the parties was inaccurate or inadequate for the purposes of appeal.

The Court also says that a bystander's bill of exceptions would suffice. But a bystander's bill is nothing more than a bill of exceptions prepared by the party appealing and certified by a bystander where the judge refuses or is unable so to certify. See, *e. g., Cartwright* v. *Barnett,* 192 Ark. 206, 90 S. W. 2d 485; *McKee* v. *Elwell,* 67 Colo. 149, 186 P. 714. And, as said by a unanimous Court:

> "Historically a bill of exceptions does not embody a verbatim transcript of the evidence but, on the contrary, a statement with respect to the evidence adequate to present the contentions made in the appellate court. Such a bill may be prepared from notes kept by counsel, from the judge's notes, from the recollection of witnesses as to what occurred at the trial, and, in short, from any and all sources which will contribute to a veracious account of the trial judge's action and the basis on which his ruling was invoked." *Miller* v. *United States,* 317 U. S. 192, 198.

Furthermore, in the *Miller* case the Court expressly observed that "counsel [for petitioners] could, therefore, have prepared and presented to the trial judge, *as was his duty,* a bill of exceptions so prepared, and it would then have become the duty of the trial judge to approve it, if accurate, or, if not, to assist in making it accurately reflect the trial proceedings." *Id.,* at 199 (emphasis supplied). The State of Washington here did not leave it solely to the defendant or his counsel to prepare the appellate record in the first instance. Upon motion by the defendants, the court proceeded, giving every opportunity to the parties to participate, to prepare a "statement with respect to the evidence adequate to present the contentions made in the appellate court." *Id.,* at 198.

Under any standard enunciated by this Court, then, the materials before the Supreme Court afforded ample basis for passing upon petitioners' claims. The conclusion of the Supreme Court of Washington, likewise, was that the record before it was adequate for review. Its judgment was that the appeal was frivolous and that no stenographic transcript was required to dispose of it. I think the court was correct—as an examination of the alleged errors in the light of the record supplied will demonstrate.

## II.

The errors alleged by petitioners were as follows:

"(1) Testimony of witnesses contradict each other on the identification of the defendants.

"(2) Identification of clothes and weapons in error, no continuency of possession shown, nor ownership established, nor was ownership of these articles by the Defendants proven.

"(3) Testimony of many witnesses in direct conflict with each other and at times contradict each

other, as to what happened and how it happened and by whom it was done.

"(4) That one witness perjured himself repeatedly and that his testimony was not stricken or thrown out.

"(5) That the presumption of innocence was never afforded the Defendants.

"(6) That the trial Judge was prejudiced against the Defendants throughout the entire trial.

"(7) That the trial Judge should have dismissed the case as the Defendants are not guilty as charged.

"(8) That exhibits were entered over objections that should not have been allowed to be entered.

"(9) That testimony was allowed over objections that should not have been allowed.

"(10) That Defendant was charged with robbing two specific companies that in fact were never proven to have been robbed.

"(11) That the Defendant was forced to sit at the same table with the two prosecutors and a policeman that was subpoenaed as a witness.

"(12) That after an order excluding witnesses from the courtroom the two main witnesses sat in the courtroom prior to testifying which had a substantial bearing on their testimony.

"(13) Unless Defendant is provided with a transcript and statement of facts at the county expense, he will be unable to prosecute this appeal."

The Court places special emphasis on points 1, 2, 3, 4 and 7 as requiring considerably more than the Washington Supreme Court had before it if a constitutionally adequate review was to be afforded the petitioners.

However, point 1 merely asserts contradictions in the testimony about the identification of the petitioners. Inconsistency in the evidence is no stranger to criminal trials and it is the task of the jury to sort out the testi-

mony and determine the facts and the guilt or innocence of the defendants. A conflict of testimony "presents but a mere question of fact, upon which the verdict of the jury is conclusive. It is enough to sustain the verdict that there was positive, direct testimony to the existence of the facts as found." *Corinne Mill, Canal & Stock Co.* v. *Toponce,* 152 U. S. 405, 408. See generally *Galloway* v. *United States,* 319 U. S. 372; *Gunning* v. *Cooley,* 281 U. S. 90. Accordingly, if a complete transcript of the trial had been placed before the Washington Supreme Court, the bare fact of inconsistency between witnesses would be quite beside the point. The governing question would be whether there was adequate evidence to support the jury's conclusion that the petitioners had indeed been identified and were guilty as charged. Here the record supplied shows that the accomplice Jennings identified the petitioners and this was even confirmed by his mother. Thus neither point 1 nor point 3 would raise any problem for an appellate review of the finding of guilt by the jury.

Point 2 questions the admissibility of a gun and a jacket because of insufficient identification. But as petitioners' own attorney pointed out, the gun was identified by the accomplice Jennings, and petitioner Lorentzen's jacket was found in the get-away car which belonged to Lorentzen and was identified as looking like the one which Lorentzen wore during the commission of the crimes. The trial court ruled that the items had been adequately identified and were admissible under Washington law and that the objections of the defendants, as to the positiveness of the identification, went to the weight, rather than to the admissibility, of the evidence. The Supreme Court of Washington agreed. I doubt seriously the propriety and wisdom of questioning the judgment of the Washington Supreme Court as to what evidence is necessary to support the admissibility of an exhibit under Washington law.

The Court apparently makes much of point 4, a general allegation of perjury, as not being intelligently reviewable upon the record made. This appears wholly untenable in the circumstances of this case. Here the trial was over, the evidence was concluded and the record closed. The jury had heard any attack the petitioners had to offer upon the credibility of the State's witnesses and had weighed the evidence and convicted the petitioners. A motion for a new trial had been denied. On the record made at the trial it was the jury's task to determine whether any witness was telling the truth and to accept or discard his testimony. The petitioners raised no issue of perjury at the trial or in their motion for a new trial. In these circumstances, it would take evidence outside the normal reporter's transcript to prove perjury, evidence which the trial court found they did not have, see *United States* v. *Johnson,* 327 U. S. 106, and evidence which could not be presented for the first time on direct appeal upon the record of a trial already made. "[N]ew evidence which is 'merely cumulative or impeaching' is not, according to the often-repeated statement of the courts, an adequate basis for the grant of a new trial." *Mesarosh* v. *United States,* 352 U. S. 1, 9; *State* v. *Brooks,* 89 Wash. 427, 154 P. 795. A reporter's transcript might help petitioners prove that perjury had been committed at their trial but such proof would have to be made, if at all, not on direct appeal, but in some other proceeding.

Point 4 also shares the difficulties inherent in points 3, 8 and 9, all of which are blanket allegations lacking any specificity. It would seem that in order to make these general assertions at all, it was necessary for petitioners to have at least some specific instances in mind, but neither the petitioners nor their attorney in any way (except as point 2 illuminates point 8) brought to the court's attention any particular instances of the kind generally alleged in these points. These contentions placed nothing before

the appellate court for review, see, *e. g.*, *Seaboard Air Line R. Co.* v. *Watson,* 287 U. S. 86; *Erdmann* v. *Henderson,* 50 Wash. 2d 296, 311 P. 2d 423; *Nordlund* v. *Pearson,* 91 Wash. 358, 157 P. 875, and if they are not to be disregarded the net effect would be to require a complete transcript in every case, contrary to the Court's own standards and contrary to the rules of *Woods* v. *Rhay,* 54 Wash. 2d 36, 338 P. 2d 332, which the Court in general approves.

As for point 7, which essentially challenges the sufficiency of the evidence to support a conviction, the trial court found the evidence overwhelming and the Washington Supreme Court considered the evidence in the record placed before it as wholly adequate. The findings of the trial court are attached as an Appendix, *post,* p. 509, and it is incredible to me that the Court would hold this statement of the evidence at the trial to be an insufficient record upon which to affirm a jury's conclusion that the petitioners were guilty of robbing two motels.

The Washington Supreme Court determined as a matter of law that point 10 was without merit since to prove the crime in this case it was unnecessary to prove the existence of the corporation and the ownership of the money. See note 5 of the Court's opinion, *ante,* p. 496. Similarly, point 6 was untenable since the only ground for the assertion of prejudice was that the trial judge made rulings adverse to them at the trial and since the challenge for prejudice was neither within the time nor in the form required by Washington law. As to point 5, the trial court found that the jury was specifically instructed in two different instructions as to the presumption of innocence and the burden of proof, the jury also being further reminded by counsel of the presumption of innocence in the selection of the jury. The Supreme Court of Washington held that this was enough under Washington law.

It is also readily apparent that the transcript demanded by petitioners would be of no aid at all in disposing of

points 11 and 12, since a transcript would not show who was or was not in the courtroom or what prejudice, if any, was suffered by the defendants by being seated at the same table with the prosecutor, which physical arrangement is normal in the trial court which tried petitioners.

Finally, it was found by the trial court that points 1, 3, 4, 5, 6, 11 and 12 were never presented to the trial court at any stage of the trial or judgment and sentence in any form or fashion and, therefore, as the Supreme Court of Washington ruled, "even if these assignments were meritorious, our rules would preclude a consideration of them."

I think the record was adequate in this case. If it could have been better, it should not pass without comment that it is normally the lot of the appellant to take the initiative in preparing and presenting a record for appeal. If petitioners' counsel could have been of more help in preparing this record—and this does not appear to have been true here—the petitioners themselves must shoulder the blame, since they repeatedly stated that they did not want the help of appointed counsel, giving no reason whatsoever other than that they desired to represent themselves. Petitioners were notified prior to the hearing on their motion for a transcript that trial counsel was available. Their immediate response to the judge was that they did not desire counsel's help and that they would represent themselves. Petitioner Draper repeated these assertions at the hearing. While the court gave Draper every opportunity to represent himself and the other petitioners in connection with making this record, he also required petitioners' trial counsel to be present to support the petitioners' position. This counsel did and it appears that both at the hearing and upon appeal where he orally argued, he placed his resources and abilities at the disposal of petitioners.

## III.

I am satisfied therefore that there has been no constitutional infirmity in the review afforded these petitioners by the State of Washington. The contrary ruling of the Court severely limits the power of the States to avoid undue expense in dealing with criminal appeals. It places their appellate processes in an inflexible procedural straitjacket. No greater harm could befall the principles of the *Griffin* and *Eskridge* cases than to require their indiscriminate application to situations where they are inapposite. The principles of these cases will not be served by an inquisitorial approach in this Court to their administration by state courts. To me the case before us amply demonstrates that the Washington courts have been faithful to the mandate of *Griffin* and *Eskridge* and I would affirm.

## APPENDIX TO OPINION OF MR. JUSTICE WHITE.

In the Superior Court of the State of Washington
in and for the County of Spokane

### No. 16603

STATE OF WASHINGTON, PLAINTIFF

*v.*

RAYMOND L. LORENTZEN, ROBERT DRAPER AND JAMES-D. LONG, DEFENDANTS

*Findings of fact and conclusions of law*

### December 12, 1960

The above entitled cause came regularly on for hearing on the 28th day of November, 1960, on the motion of each defendant in forma pauperis for a free transcript and

statement of facts, each defendant being personally present in Court and Thomas F. Lynch appearing as Court appointed counsel for each defendant, and Frank H. Johnson, Deputy Prosecuting Attorney appearing as counsel for the plaintiff, and the Court having examined the files and affidavits and having heard the argument of counsel and the individual argument of the defendant, Robert A. Draper, the Court being fully advised in the premises, now, makes findings of fact as follows:

### FINDINGS OF FACT

#### I

That each defendant was jointly charged by information filed in the Superior Court of Spokane County, with two counts of Robbery and said defendants were jointly tried before jury in the above entitled Court on September 12th, 13th and 14th, 1960.

#### II

That on September 14, 1960, the jury rendered verdicts of guilty as to each defendant on both counts of the information; that each of said defendants were thereafter on September 30, 1960, sentenced to serve not more than 20 years in the Washington State Penitentiary on each count, said sentences to run consecutively.

#### III

That the evidence established that the TraveLodge Motel is owned and operated as a motel business in Spokane, Washington, by a partnership consisting of H. E. Swanson, Dr. C. M. Anderson, and the TraveLodge Corporation, Inc., a corporation, who do business as a co-partnership under the name of the TraveLodge Motel; that at approximately 1:50 a.m., of July 5, 1960, Robert Deurbrouck was the employee of the TraveLodge Motel

and the night clerk in charge of the property and business of the TraveLodge Motel; that at that time and place the defendants, Raymond Lorentzen and James D. Long, entered the TraveLodge Motel each armed with a loaded gun and at gunpoint took from Robert Deurbrouck the approximate sum of $500.00 in lawful money of the United States which was the property of and belonged to the TraveLodge Motel; that the defendant, James D. Long, then struck Robert Deurbrouck on the back of the head with the gun held by the said James D. Long, and inflicted upon the said Robert Deurbrouck, a scalp wound which required four stitches to close.

## IV

That the defendants, Raymond Lorentzen and James D. Long, then ran to an automobile waiting outside the TraveLodge Motel in which by prearrangement, the defendant, Robert Draper, was driving said automobile, which belonged to the defendant, Raymond Lorentzen, and in which the accomplice Robert Jennings, also waited; that the defendant Robert Draper by prearrangement then drove said automobile to the DownTowner Motel which is a corporation engaged in the motel business; that the defendant James Long and the accomplice Robert Jennings, then entered the DownTowner Motel each armed with a loaded gun and the accomplice held up the night clerk and employee of the DownTowner Motel, one Barry Roff, who was then in charge of, the business and property of the DownTowner Motel and took by force and violence, the approximate sum of $1800.00 in lawful money of the United States, the property of the Down-Towner Motel, Inc., a corporation; that the accomplice, Robert Jennings, then struck the said Barry Roff over the back of the head with the gun held and used by the said Robert Jennings; that the defendant, James Long, and the said accomplice, Robert Jennings thereupon ran to

the waiting automobile which the defendant Robert Draper was driving, and in which the defendant Raymond Lorentzen was waiting.

## V

That as Raymond Lorentzen and Robert Jennings ran from the DownTowner Motel to the aforementioned waiting automobile, they were observed by police officer Donald Rafferty, who was on duty as a police officer in the downtown area of Spokane at that time; that officer Rafferty then followed said defendants for a few blocks until he was advised by the police radio on his vehicle, of the above described robbery of the DownTowner Motel; that he thereupon attempted to stop the vehicle in which the above three defendants and the accomplice Robert Jennings were riding, but the defendant, Robert Draper, accelerated his vehicle and attempted to flee; that officer Rafferty then gave chase to this vehicle through downtown streets of Spokane at speeds up to 60 miles per hour and was joined in this pursuit by another police car driven by officer Robert Bailor; that in the course of this pursuit, the defendants fired an unknown number of shots at the pursuing police vehicles; that at the intersection of Third and Wall Streets in Spokane, the vehicle occupied by the defendants was rammed from behind by the police car driven by officer Bailor which caused the defendants' vehicle to go out of control and stop in a parking lot on the northeast corner of Third and Wall Streets in Spokane.

## VI

That the defendants, James Long and Raymond Lorentzen, were each apprehended in this vehicle with the proceeds of the aforementioned robberies including envelopes, receipts, and papers identified as belonging to and

coming from the said motels recovered in said vehicle. The defendant James D. Long immediately thereafter admitted his participation in the above described robberies.

## VII

That the defendant, Robert Draper, and the accomplice, Robert Jennings, fled from said vehicle and returned to the Davenport Hotel in Spokane, Washington, in which Robert Draper had rented a room under the name "J. Radde;" that at approximately noon of July 5, 1960, the defendant, Robert Draper, left the Davenport Hotel and flew to Seattle on a Northwest Air Lines, commercial plane, where he was apprehended several days later with the passenger's flight coupon still in his possession; that said passenger's flight coupon is in evidence as exhibit 26 and 26a, and that the Davenport Hotel registration of the defendants, Raymond Lorentzen, James Long, and Robert Draper, the latter using the name of "J. Radde," is in evidence as exhibits 23, 24 and 25.

## VIII

That the accomplice, Robert Jennings, entered a plea of guilty to the aforementioned two counts of Robbery in the Superior Court of Spokane County, on July 19, 1960, and was sentenced by the Honorable Louis F. Bunge, Judge of the above entitled Court, to not more than 20 years confinement in the Washington State Penitentiary on each count, said sentence to run consecutively; that the said Robert Jennings testified as a witness for the State at the trial of the three co-defendants, and testified that the three defendants had driven to Robert Jennings' home near Addy, Washington, approximately 60 miles north of Spokane, in the late afternoon of July 4, 1960, and that the defendants persuaded him to return to Spokane with said defendants; that said testimony was

confirmed by testimony of Mrs. Gladys Allen, the mother of the said Robert Jennings; that said Robert Jennings further testified that the robberies of the TraveLodge Motel and the DownTowner Motel were jointly planned by the three defendants and himself in the Davenport Hotel room occupied by the defendant, Robert Draper, approximately several hours before the robberies; that the four men then travelled the route later taken in the actual robberies for the purpose of planning and timing said robberies.

## IX

That when the State rested its case in chief, the defendants rested their case without taking the witness stand or offering any evidence.

## X

That the motions of each defendant for free transcript and statement of fact are identical in substance and the Court finds each assignment of error by each defendant without merit as follows:

"A. That, as to assignments of error one and three, no showing whatever has been made of any conflict or contradiction in the testimony of any witness and the Court finds that no such material conflict or contradiction was present in the trial.

"B. As to assignments of error two and eight, relating to identification and admission of exhibits, each exhibit was properly identified at the trial and was material and relevant to the issues and that the objection to exhibit two, the gun identified by the accomplice Robert Jennings, as one used in the holdup, as well as the objections to remaining exhibits offered, goes to the weight the jury should place upon the exhibits rather than their admissibility.

"C. As to assignment of error number four, no showing of any perjury has been made beyond the bare assertion

by the defendants of perjury, and the Court finds there is no basis in fact that has been presented to establish such claim.

"D. As to assignment of error five, the Court finds that the jury was specifically instructed in instructions number two and four, as to the presumption of innocence and the burden of proof, and the jury was further reminded by counsel in the selection of the jury of said matters.

"E. As to assignment of error number six, no showing whatever has been made of any prejudice against the defendants, and no such prejudice existed.

"F. As to assignment of error number seven, the Court finds the evidence offered by the State against these defendants overwhelming as to their guilt of the crimes charged.

"G. As to assignment of error number nine, no showing has been made by these defendants as to any testimony that was improperly admitted, and the Court finds that no such testimony was admitted.

"H. As to assignment of error number ten, the Court finds that the uncontradicted evidence of the State has established the legal nature of each motel business and the ownership of the property that was taken in the robberies, by the employees of said business, and one of the owners and co-partners of the TraveLodge Motel, Mr. H. E. Swanson.

"I. As to assignment of error number eleven; that all counsel and defendants at this trial participated therein from one counsel table adequate to provide all parties with necessary working room, and that no conceivable prejudices resulted to these defendants from such fact, and that no demonstration by any participant in the trial was evident to the Court or ever brought to the attention of the Court during any time of the trial.

"J. As to assignment of error number twelve, the Court finds that its attention was never called to the presence

of any witnesses in the courtroom after the rule of exclusion had been invoked, and to the Court's knowledge, no such witnesses were present in Court except when they testified and that, if such presence were established, no showing of prejudice to the defendants has been made."

## XI

The Court further finds that assignments of error, one, three, four, five, six, eleven and twelve were never presented to the Court at any stage of the trial or judgment and sentence in any form or fashion.

From the foregoing Findings of Fact, the Court makes the following

### CONCLUSIONS OF LAW

## I

That the claims of error of each defendant are frivolous, groundless and without any basis in fact or law.

## II

That the defendants do not allege or substantiate any factual basis for their assignments of error beyond the bare assertion of such claims.

## III

That the assignments of error as set out by each defendant are patently frivolous; that the guilt of each defendant as to each count of Robbery was established by overwhelming evidence, and that accordingly the furnishing of a statement of facts would result in a waste of public funds.

Done in open court this 12th day of December, 1960.

HUGH H. EVANS,
*Judge.*