James W. OYLER, Appellant,

v.

J. C. TAYLOR, Warden, United States Penitentiary, Leavenworth, Kansas, Appellee.

No. 7784.

United States Court of Appeals Tenth Circuit.

Nov. 17, 1964.

Laurent A. Bougie, Denver, Colo., for appellant.

Benjamin E. Franklin, Asst. U. S. Atty., Topeka, Kan., Newell A. George,

U. S. Atty., Topeka, Kan., with him on the brief, for appellee.

Before PHILLIPS, PICKETT and HILL, Circuit Judges.

PICKETT, Circuit Judge.

James Oyler was convicted in the State Court of Alaska on an indictment charging him in two counts with rape and incest. He was sentenced to imprisonment for a period of 14 years on each count, the sentences to run concurrently. Immediately after sentencing, Oyler was informed by his court-appointed counsel that his representation had terminated and that he would not represent him on appeal. The attorney, however, advised Oyler of the need to file a notice of appeal within the next few days if he desired to take an appeal. No appeal from the conviction was taken to the Supreme Court of Alaska. Oyler is now serving the sentences in the United States Penitentiary at Leavenworth, Kansas, pursuant to a contract between the State of Alaska and the United States Director of the Bureau of Prisons.[1] In this habeas corpus proceeding Oyler alleges that the sentence which he is now serving is void because he was denied fundamental rights in violation of the United States Constitution. After a full hearing, the court entered judgment dismissing his petition and remanding him to the custody of the Warden of the penitentiary.

Shortly after the entry of the judgment and sentence, Oyler advised the state trial court that he desired to have an attorney appointed to perfect an appeal. Rules promulgated by the Supreme Court of Alaska provide for appeals by indigent criminal defendants, including the appointment of an attorney to represent such indigent person.[2] Oyler was furnished with a copy of the applicable rules and informed by the court on three different occasions that his appeal in forma pauperis would be considered

---

1. Such contracts are authorized by 18 U.S.C. § 5003, Alaska State Statutes, Session Laws 1960, Chapter 133, Sec. 10.

2. Rule 43 adopted by the Supreme Court of Alaska reads in part:
"(a) *Fees and Costs.* The superior court may authorize an appeal or peti-

when he complied with them. The requirements of the rules are simple and understandable, but Oyler made no attempt to comply therewith.

The record is not clear whether Oyler has exhausted his state remedies, whatever they may be. Several motions have been presented, the exact nature of which is not disclosed. There is reference to a habeas corpus proceeding in the Supreme Court of Alaska. In view of the state of the record, and the fact that Oyler is now confined in the State of Kansas where jurisdiction of the courts of Alaska in habeas corpus is at least doubtful, we assume that he has exhausted his state remedies.

■■ Well recognized principles control the disposition of this case. Relief in proceedings such as this is available to a state prisoner only when fundamental rights guaranteed by the Constitution of the United States have been transgressed. Hickock v. Crouse, 10 Cir., 334 F.2d 95, and cases cited.[3] Habeas Corpus is not available as a substitute for appeal. Hickock v. Crouse,

supra; Bizup v. Tinsley, 10 Cir., 316 F.2d 284; Alexander v. Daugherty, 10 Cir., 286 F.2d 645, cert. denied 366 U.S. 939, 81 S.Ct. 1666, 6 L.Ed.2d 849; Browning v. Hand, 10 Cir., 284 F.2d 346, cert. denied 369 U.S. 821, 82 S.Ct. 833, 7 L.Ed.2d 786; O'Dell v. Hudspeth, 10 Cir., 189 F.2d 300, cert. denied 342 U.S. 873, 72 S.Ct. 116, 96 L.Ed. 565.

■■ It is urged that Oyler was deprived of his right to appeal because of his poverty, and that under the rule of Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, rehearing denied 351 U.S. 958, 76 S.Ct. 844, 100 L.Ed. 1480; Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811, rehearing denied 373 U.S. 905, 83 S.Ct. 1288, 10 L.Ed.2d 200, and Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899, he has been unconstitutionally discriminated against.[4] The basis for the rule of Griffin v. Illinois, supra, and like cases, is that when a state provides for appeal in criminal cases, it is an invidious discrimination to deny an appeal to a convicted person

tion for review, without prepayment of fees and costs or the giving of security therefor, by a person who makes affidavit that he is unable to pay such fees or costs or give security. The affidavit shall state the nature of the appeal or petition and affiant's belief that he is entitled to redress.

"An appeal or petition for review may not be taken in forma pauperis if the superior court certifies in writing that it is not taken in good faith.

"(b) *Costs of Transcript and Brief.* In any civil ·or criminal case, upon the filing of a like affidavit, the superior court may direct that the expense of preparation of the record, or furnishing a transcript of the evidence or proceedings, and of the costs of duplicating briefs, be waived.

"(c) *Counsel.* In criminal matters the superior court may appoint an attorney to represent any such person unable to employ counsel."

3. In Hickock v. Crouse, 10 Cir., 334 F.2d 95, 100, it was said:

"While the power of a federal court in a habeas corpus proceeding is great indeed, the narrow limits of its jurisdic-

tion within which that power may be exercised when reviewing a state court conviction cannot be too strongly emphasized. The function of the great writ in such instances ' * * * is to test by way of an original civil proceeding, independent of the normal channels of review of criminal judgments, the very gravest allegations. State prisoners are entitled to relief on federal habeas corpus only upon proving that their detention violates the fundamental liberties of the person, safeguarded against state action by the Federal Constitution.' Townsend v. Sain, 372 U.S. 293, 311–312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770. See, also, Fay v. Noia, 372 U.S. 391, 83 S. Ct. 822, 9 L.Ed.2d 837."

4. It is now settled that where there has been a procedural default in the state court which prevented a state determination of the constitutional questions, federal courts have authority to release a state prisoner on United States constitutional grounds. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837. However, in Noia it was stipulated that the unconstitutional conduct was the sole ground of the conviction.

because he is unable to pay the appeal costs.[5]

This is not a case like Douglas v. People of State of California, supra, where the petitioner was denied the right of appeal with the assistance of counsel. The Alaska rules provide that indigent persons convicted of crimes shall have the right of appeal with assistance of counsel upon compliance with its rules. Oyler had the same right to take an appeal as anyone else, and when that appeal was not taken within the statutory time, the right was lost to him the same as it would have been to any other convicted person, regardless of financial ability

Oyler's contention that his alleged confession was wrongfully introduced in evidence and is a violation of a constitutional right is without merit. He has maintained throughout this proceeding that he did not make the confession and that the signature on the instrument produced in evidence was not his.[6] The question of whether the document introduced in evidence at the trial was the confession of Oyler was one of fact to be determined by a jury. People v. Leving, 371 Ill. 448, 21 N.E.2d 391; State v. Shipley, 232 Or. 354, 375 P.2d 237, cert. denied 374 U.S. 811, 83 S.Ct. 1701, 10 L.Ed.2d 1034, rehearing denied 375 U.S. 872, 84 S.Ct. 32, 11 L.Ed.2d 102; 23 C.J.S. Criminal Law § 817(13). Under the circumstances, its admission in evidence does not raise a constitutional question.

The only other contention that merits consideration here is that the conviction was obtained by use of testimony known to the prosecution to have been perjured. The testimony referred to is that of Irene Davis with whom Oyler was living at the time of the alleged offense, referred to by him as his wife. She testified that at the time of trial her former husband was dead and that

---

5. As succinctly stated in Eskridge v. Washington, 357 U.S. 214, 216, 78 S.Ct. 1061, 1062, 2 L.Ed.2d 1269, the rule is that "a State denies a constitutional right guaranteed by the Fourteenth Amendment if it allows all convicted defendants to have appellate review except those who cannot afford to pay for the records of their trials."

6. In his testimony in this proceeding, after pointing out discrepancies in the alleged confession, Oyler said: "There are no initials on the corrections at all. At the top of the page underneath the name and place of birth it says, 'I have advised the person of his rights of counsel.' This was not done. I believe we have an exhibit which will be entered on that— yes, it will be Exhibit 29 that states that the Police Officer admits that he didn't advise me—me of the right of a lawyer before I made this statement, if I made it. I deny giving it, and deny signing it. It was prepared when I came in. And he threw it down and told me to go ahead and sign it. And I said— I flatly refused. And I am going to tell you this is hearsay, but I am going to tell you the words he said, he said, 'I don't give a damn whether you sign it or not. I am going to stick you with it.' Now, you will notice in the last line there the one word that says, 'usual,'

instead of the word, 'usually,' the text of that is written up illiterate, and I am not an illiterate man. I have had an education. And when I told a story I would tell it fairly true and use my words in the correct tense, not in an illiterate form."
On cross-examination Oyler was questioned as follows:
"Q What portion of the confession that you made—just the ballpoint pen—that portion of it is what was added to it, is what you contend was added to it?
"A That and the typing at the bottom. And, the addition at the bottom of it. And the fact that this copy here is not the original copy that was presented for me to sign. I never saw this until I got it in the mail in October.
"Q That portion of the bottom of it and the ballpoint entry then is all that you contend is not what you stated?
"A I didn't state it period. I never gave it.
"Q You deny that you gave the statement?
"A I deny giving it. I deny signing it. They have only got one witness that says I did, him and me.
"Q And you deny that that is your signature on it?
"A I do, and will gladly submit my signature to a handwriting expert for analysis anytime."

her association with a man named Davis was limited before she complained of Oyler's misconduct with his daughter. This testimony, even if untrue, related to collateral matters which would affect only the credibility of the witness. In a proceeding of this nature, the burden is on the petitioner to prove that material evidence was perjured and that it was knowingly used by the prosecution to obtain a conviction. Gay v. Graham, 10 Cir., 269 F.2d 482; London v. Oklahoma, 10 Cir., 248 F.2d 788; Lister v. McLeod, 10 Cir., 240 F.2d 16; Tilghman v. Hunter, 10 Cir., 167 F.2d 661; Cobb v. Hunter, 10 Cir., 167 F.2d 888, cert. denied 335 U.S. 832, 69 S.Ct. 19, 93 L.Ed. 385. The record is entirely devoid of any evidence that the prosecution knew that such testimony was untrue.

Affirmed.