[No. 2307–3. Division Three. July 18, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. FLORENTINO MARTINEZ, ET AL, *Petitioners.*

*Roland L. Skala* and *Weeks, Buren, Thorner & Dietzen,* for petitioners.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Robert N. Hackett, Jr., Deputy,* for respondent.

MUNSON, C.J.—Petitioners were convicted of rape in the second degree. They sought a finding of indigency, appointment of counsel, and authorization for the transcription of a verbatim report of proceedings, alleging insufficiency of the evidence. The trial court found they were indigents and appointed trial counsel as appellate counsel, but denied the verbatim report of proceedings and ordered their counsel to prepare a narrative report of proceedings, which has been done.

They petitioned for discretionary review of the order denying a verbatim report of proceedings; our court commissioner denied the motion, and they moved to modify that denial. This court, having considered the documents herein, listened to the recording of counsel's argument before the commissioner, and nothing further having been offered by either party, deems the matter submitted on the record and affirms the commissioner's ruling.

Rape in the second degree, RCW 9.79.180, is defined:

(1) A person is guilty of rape in the second degree when, under circumstances not constituting rape in the first degree, the person engages in sexual intercourse with another person, not married to the perpetrator:

(a) by forcible compulsion; . . .

. . .

(2) Rape in the second degree is a felony, and shall be punished by imprisonment in the state penitentiary for not more than ten years.

The narrative report of proceedings prepared by defense counsel is quoted in toto:

### PREFACE

Each of the defendants were charged with Second Degree Rape alleged to have occurred on or about December 7, 1976, in Yakima County, Washington. Trial in the matter was held on January 19 and 20, 1977, The Honorable Blaine Hopp presiding.

### TESTIMONY

Mr. Robert Buchannan, age 15, was called on behalf of the State and testified that he knew the alleged victim, Lori Matley, approximately two weeks at the time the incident complained of occurred. The two were in Yakima on or about December 7, 1976, staying with friends. They planned to visit some acquaintenances [sic] in Selah, Washington, located just north of Yakima, and were hitch hiking in that direction when they were picked up by the defendants. Instead of proceeding to Selah, the car turned and proceeded back through Yakima in a southerly direction. After one stop, at which time the defendants relieved themselves, the car reached a secluded dirt road, apparently near Renegade Raceway, which is located some ten miles south of Yakima. At that point, the defendants, although they spoke little, if any, English, indicated to Buchannan that they wished to have sexual relations with Lori Matley. At the time of this "conversation" all parties were standing outside the car. Buchannan testified that there was some mention of a knife by one of the defendants. Both Mr. Buchannan and Lori Matley then ran and concealed themselves near the road. A short time later, they heard someone approaching and ran again. They became separated and Mr. Buchannan did not see Lori Matley until later that

88

evening. He testified that he heard her scream and that the automobile left one–half [hour] to forty–five minutes later.

Lori Matley, age 17, was called on behalf of the State and testified that she and Bob Buchannan were hitch hiking north on Interstate 82 in Yakima when they were offered a ride by three Mexicans driving a "little red car." She and Buchannan had asked to be taken to Selah, but the car turned into Yakima and proceeded south, eventually stopping on a gravel road somewhere south of the City of Yakima. A conversation occurred outside of the car at that location and when she heard mention of a knife, she and Buchannan ran. She was subsequently pursued and caught by one of the Mexicans and taken back to the car. The car was then driven to another remote area near a canal bank past a sign which said "Wapato." Matley testified that at that point, the three Mexicans had sexual relations with her. The car was then driven to Wapato and parked across the street from the Wapato Police Station. As soon as Matley got out of the car, she ran to the Wapato Police Station and reported the incident.

Dr. Truhler was called on behalf of the State and testified that on December 7, at St. Elizabeth's Hospital, he examined Lori Matley and found signs of recent forceable intercourse.

The defendants, through an interpreter, testified that they picked up Buchannan and Matley and were asked to take them to Zillah, a town located south of Yakima. The defendants testified that all of the people in the car drank some beer, and that they didn't understand why Buchannan ran away. All three defendants testified that Lori Matley consented to the sexual contact. After the acts were completed, Matley indicated that she desired to take a bath and it was then that they drove her to one of the defendant's residence located across the street from the Wapato Police Station. They testified that when she ran into the Police Station, they left fearing that she would report them as illegal aliens. All of the defendants were under 19 years of age.

There were other witnesses called whose testimony is not relevant to the disposition of this appeal.

The rules of appellate procedure (RAP) allow three means of providing this court with a report of proceedings,

*i.e.,* verbatim (RAP 9.2); narrative (RAP 9.3); or agreed (RAP 9.4). The type of report utilized must be submitted to the trial judge for approval, but is deemed approved if no objection is made by the other party or if the judge does not otherwise notify the parties within 10 days. RAP 9.5(b). No objection has been made.

Inherent in this narrative report of proceedings is the identity of the parties and an admission of sexual intercourse, thus leaving as the only remaining factual issue a question of forcible compulsion versus consent. The commissioner ruled:

> [Inasmuch as:]
> (1) petitioners' counsel has prepared a narrative report of proceedings from his and the prosecutor's trial notes which accurately summarizes the evidence submitted by both sides, (2) that if a question had arisen as to what transpired at a critical moment in the trial petitioners' counsel could have consulted with the court reporter to answer the question, and (3) no objections were raised as to the instructions submitted to the jury, and being of the opinion that even though petitioners may challenge, among other things, the sufficiency of the evidence in the context of *Anders v. California,* 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396 (1967), the trial court's refusal does not preclude this Court or petitioners' counsel from examining a "sufficient" report of proceedings as required by *Draper v. Washington,* 372 U.S. 487, 495–6, 9 L. Ed. 2d 899, 83 S. Ct. 774 (1963); *Griffin v. Illinois,* 351 U.S. 12, 20, 100 L. Ed. 891, 76 S. Ct. 585 (1956); *State v. Atteberry,* 87 Wn.2d 556, 554 P.2d 1053 (1976); and *State v. Jackson,* 87 Wn.2d 562, 554 P.2d 1347 (1976), the motion is denied.

RAP 15.2(a) sets forth the requirements to seek a determination of indigency for a review partially or totally at public expense. Included therein is a requirement that the motion include a statement of "the issues sought to be reviewed." Here, both counsel indicated that the appeal would probably be frivolous, even though petitioners orally advised the trial court at the time of sentencing that they desired to appeal. Apparently this precipitated the trial

court to deny the verbatim report of proceedings and order preparation of a narrative report.

 In *State v. Atteberry*, 87 Wn.2d 556, 554 P.2d 1053 (1976), the court cites *Griffin v. Illinois*, 351 U.S. 12, 100 L. Ed. 2d 891, 76 S. Ct. 585, 55 A.L.R.2d 1055 (1956), for the proposition that "[a] state may use any means of reporting trial proceedings as long as it affords adequate and effective appellate review to indigent defendants." *State v. Atteberry, supra* at 558. The court then quotes from *Draper v. Washington*, 372 U.S. 487, 495, 9 L. Ed. 2d 899, 83 S. Ct. 774 (1963), describing available alternatives to a verbatim transcription:

> Alternative methods of reporting trial proceedings are permissible if they place before the appellate court *an equivalent report of the events at trial from which the appellant's contentions arise.* A statement of facts agreed to by both sides, a full narrative statement based perhaps on the trial judge's minutes taken during trial or on the court reporter's untranscribed notes, or a bystander's bill of exceptions might all be adequate substitutes, equally as good as a transcript. *Moreover, part or all of the stenographic transcript in certain cases will not be germane to consideration of the appeal, and a State will not be required to expend its funds unnecessarily in such circumstances. . . .*
> (Italics ours.)

(First italics ours.) *State v. Atteberry, supra* at 558.

The court in *Atteberry* then discusses *Anders v. California*, 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396 (1967), and the procedure for a frivolous appeal, noting that "[c]ounsel, however, needs a statement of facts of sufficient completeness to meet the *Draper* and *Anders* directives." *State v. Atteberry, supra* at 561.

In *Anders,* the late Justice Clark, writing for a majority of five, concluded:

> A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. . . . if it finds any of the legal

points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

 . . . This procedure will assure penniless defendants the same rights and opportunities on appeal—as nearly as is practicable—as are enjoyed by those persons who are in a similar situation but who are able to afford the retention of private counsel.

*Anders v. California, supra* at 744–45. A footnote in *State v. Atteberry, supra* at 562, suggests "counsel may need the entire record if he decides to comply with *Anders v. California* . . ."

We acknowledge that in many cases a verbatim report of proceedings may be required. However, here, no assignment is raised other than insufficiency of the evidence. We believe petitioners should be more specific and should direct attention to the element or elements of the crime which they believe are not established by the evidence before a full verbatim report need be ordered. A broad allegation of insufficiency is inadequate in itself, particularly where, as here, the narrative statement acknowledges that the petitioners and the prosecutrix engaged in sexual intercourse and the only apparent issue is lack of consent to the act. The narrative report acknowledges the prosecutrix' denial of consent and the petitioners' testimony that the act was consensual. Thus, a dispute of fact is established and is to be resolved by the jury's determination of the credibility of the witnesses. If there is some other issue to which the allegation of insufficiency is directed it is not apparent.

In *Anders,* the court apparently had a verbatim report of proceedings before it, so a determination of whether a different form of a report of proceedings would be acceptable did not arise. However, in *Draper* the court recognized alternative methods of reporting proceedings and that in certain cases the verbatim report of the entire proceedings would not be required to afford an adequate appellate review.

To require petitioners to specify the areas they consider unsupported by sufficient evidence does not impose an impossible or unduly restrictive barrier to an appellate review of their proceedings. That a nonindigent may waste his own money in preparing unnecessary and excessive transcriptions of proceedings, beyond that necessary for review, does not require the State to do so. Surely the public treasury should not be unduly taxed to provide superfluous transcripts unnecessary to afford an adequate appellate review.[1]

In *State v. Jackson*, 87 Wn.2d 562, 566, 554 P.2d 1347 (1976), the court acknowledged adoption of the "*Anders* prerequisite in *State v. Theobald*, 78 Wn.2d 184, 470 P.2d 188 (1970)." In *Jackson*, a unanimous court noted: "that the State is not obligated to pay for a transcript in every case." But, "there was no showing of any better method of reporting the trial testimony . . ." in that particular case, and a verbatim report of proceedings at public expense was provided. *State v. Jackson, supra* at 566–67.

Here, an alternative form of reporting presents what we believe to be an impartial recitation of the testimony produced at trial. Petitioners' counsel prepared the narrative report and appears to have complied with RAP 9.3 in that he exercised his "best efforts to include a fair and accurate statement of the occurrences in and evidence introduced in the trial court material to the issues on review." No objection has been taken to that report. We accept the report as a fair and accurate statement of what occurred in the trial below, and unless counsel is more specific as to the area in which he alleges the evidence is insufficient, we see no necessity for ordering a verbatim report of the proceedings.

---

[1] In the 8 years this court has been in existence, thousands of unnecessary pages have been included in verbatim reports of proceedings. This extraneous inclusion has subjected litigants to excessive costs on appeal and has caused this court many wasted hours reviewing those unnecessary portions of records.

The motion to modify the commissioner's ruling is denied and the order of the trial court is affirmed.

GREEN and MCINTURFF, JJ., concur.