**UNITED STATES of America,**
**Appellee,**

v.

**Othell CAMPBELL, Appellant.**

**No. 8821.**

United States Court of Appeals
Fourth Circuit.

Argued March 25, 1963.

Decided March 28, 1963.

Robert A. Clay and James A. K. Roper, Greenville, S. C., for appellant.

Robert O. DuPre, Asst. U. S. Atty. (John C. Williams, U. S. Atty., on brief), for appellee.

Before SOBELOFF, Chief Judge, HAYNSWORTH, Circuit Judge, and PREYER, District Judge.

PER CURIAM.

Convicted of concealing and removing nontax paid whisky, the defend-

ant has appealed, questioning the sufficiency of the evidence to sustain the conviction and the denial of a motion for a new trial. We find no insufficiency of the evidence, but conclude that a new trial should have been granted.

The evidence discloses that revenue agents directed two undercover agents to go to the home of the defendant and undertake to purchase whisky from him. The undercover agents, one of whom was a policeman, supplied with money to effect the purchase, drove in their automobile to the rear of a house near Greer, South Carolina. Only one of the two, the policeman, was available as a witness at the trial. He testified that his confederate went up to the back porch of the house, where he was met by a man who came out of a door within the house. It was in the early hours of the morning and quite dark, so that the policeman, who had remained in the automobile, could see little of the man on the porch except his general form. The policeman's confederate returned presently to report that the arrangements had been made, but the whisky had not yet arrived. Shortly thereafter, one Griffin arrived in another automobile with a load of whisky, and, about this time, the policeman-witness saw a light go on in the bathroom of the house, and, there, he observed the defendant, in the light, washing his face and combing his hair. Still later, he saw a figure of a man again emerge from the rear door of the house, and, after further conversation with the policeman's confederate, the occupant of the house instructed Griffin to assist the two agents in the loading of the illegal whisky into their automobile.

From this sketchy recital of the testimony, it is apparent that, though the principal prosecution witness had no opportunity to obtain a clear view of the man on the back porch who arranged and directed the sale and the transfer of the whisky, he could positively testify that the defendant was in the house at the time, approximately 4:00 o'clock in the morning. Since he had been directed to that house for the purpose of contacting the defendant, a permissible inference naturally arises that the man who came to the back porch was the same man whom the defendant observed in the bright light of the bathroom and whom the witness could positively identify as the defendant.

The District Judge, however, did not submit the case to the jury upon the basis of a permissible inference of the identity of the man on the porch and the defendant in the bathroom. He gave the jury a positive instruction that, if they believed the policeman-witness and that he was not mistaken in his identification of the defendant as the man he saw in the bathroom, they should convict the defendant. They were not allowed to consider whether or not, though the defendant was in the house and seen in the bathroom, the man who came out on the porch and handled the illegal transaction was another.

In giving this mandatory instruction to the jury, the Court acted out of a background of information which the jury did not possess. When considering counsel's objection to the charge on this score, the following colloquy occurred:

"The Court: He said he saw a man and that man was Campbell.

"Mr. Roper: Not when he came to the door. He didn't identify him by form. I asked him the next question, and he said he saw a form; but then when he turned on the light in the bathroom, that it was Campbell. Now, the point is, with all the Campbells in that country and could have been in that house, is that the Campbell—

"The Court: I never knew a Campbell in my life that wasn't in the liquor business.

"Mr. Roper: I can buy that.

"The Court: As a matter of fact, I defended them all. When I was at the bar, I defended all the Campbells in the liquor business; and after I got to be District Attorney, I prosecuted all the Campbells; and now that I have been a judge, I have

**9**

been trying Campbells 25 years as a judge.

"Mr. Roper: Would it necessarily follow, your Honor, if he was in the house—

"The Court: Not only that, I have tried this fellow three or four times.

"Mr. Roper: —that he would be guilty.

"The Court: What?

"Mr. Roper: It would not necessarily follow, though, would it, your Honor, if he came to the door even, or he was in the house, that he necessarily negotiated this transaction.

"The Court: What would you think a Campbell would have been doing there with that liquor if he wasn't participating?

"Mr. Roper: It may not have been his, if it was there.

"The Court: It doesn't make any difference if it was his liquor or not if he was there participating in it. They never did come out and say whose house it was in.

"Mr. Roper: That's the point I am making: they haven't proved that.

"The Court: I will take your first exception. I think your first exception is correct.* Bring them back. I might say to the jury that knowing the Campbells like I do, I forgot to put that part in you suggested. Want me to do that?

"Mr. Roper: No, sir.

"The Court: All right. Bring them in."

The colloquy between the Court and the defendant's counsel, of course, occurred without the presence of the jury. It suggests, however, that the District Judge may have been convinced of the defendant's guilt before the trial commenced, and the defendant complains that this was made evident to the jury in a number of remarks and rulings in the course of the trial and in the presence of the jury. We need not detail the instances upon which this contention is based or consider whether, in the absence of any other reason for granting a new trial, they alone were so prejudicial as to warrant the granting of a new trial. The defendant, however, is entitled to be tried in an atmosphere in which he may receive the full benefit of the presumption of innocence to which he is entitled. Under the circumstances, since a new trial must be granted because of the peremptory instruction which foreclosed the jury's choice of permissible but conflicting inferences, we think that the new trial should be before some other district judge whose contacts with the defendant and his relatives have been less extensive.

Reversed and remanded.

---

* The first exception was unrelated to this point.