UNITED STATES of America ex rel.
John McGRATH, Petitioner-
Appellant,

v.

J. E. LaVALLEE, Warden of Clinton Pris-
on, Dannemora, New York,
Respondent-Appellee.

No. 354, Docket 28087.

United States Court of Appeals
Second Circuit.

Argued May 7, 1963.

Decided June 12, 1963.

Robert V. Zener, New York City, for petitioner-appellant.

Ronald J. Offenkrantz, Deputy Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of State of New York, and Irving Galt, Asst. Sol. Gen., on the brief), for respondent-appellee.

Before FRIENDLY, KAUFMAN and MARSHALL, Circuit Judges.

KAUFMAN, Circuit Judge.

Appellant is serving a prison sentence under a judgment entered in the County Court of Queens County, New York, upon a plea of guilty to the crime of second degree robbery. His application for a writ of habeas corpus, founded upon the contention that his guilty plea was not entered voluntarily, was denied by District Judge Brennan without a hearing. Appellant had previously raised this contention in the state courts on application for a writ of coram nobis and his application was there also denied without hearing. The denial was affirmed in the Appellate Division, the New York Court of Appeals denied leave to appeal, and certiorari was denied by the Supreme Court. State court remedies have been exhausted. 28 U.S.C. § 2254; Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

On October 20, 1953, appellant was indicted for the crimes of first degree robbery, petit larceny, second degree assault, and possession of a dangerous weapon. On November 17, 1953, the date the case was called for trial, the appellant withdrew his plea of not guilty and, with the guidance of experienced counsel, entered a plea of guilty to robbery in the second degree. Appellant's decision to alter his plea was made during the course of a conference in the chambers of the trial judge—attended by the judge, the defendant, defendant's attorney, the Assistant District Attorney, the court stenographer, and at least one court attendant. On February 2, 1954, appellant was sentenced as a second felony offender for a term of not less than twenty-nine nor more than thirty years.

The validity of appellant's contention as to the involuntary character of his guilty plea and the resulting violation of due process turns upon an evaluation of the conversation which took place between the appellant, the trial judge, and the appellant's attorney during the conference on November 17, 1953.

Accompanying his application in the District Court for a writ of habeas corpus was an affidavit setting out in considerable detail appellant's version of what transpired at the conference in the judge's chambers. A similar affidavit had been submitted by appellant to the New York courts in support of his application for coram nobis; the truth of the matter asserted therein was sworn to by appellant's trial attorney as well as by the appellant himself. Appellant charges in his papers that upon entering the judge's chambers he was informed by the judge that the discussion was to be off the record and that, in fact, no minutes were recorded (although appellant does concede that a court stenographer was present). The judge, appellant says, stated that he had been told by the district attorney that the appellant "didn't have a chance 'on a trial'; that they had me 'like this' bringing both his arms across the front of his body to indicate that I was in a vise. He went on to say that if I went to trial and was convicted, I would never see the sunshine again, because my record alone would convict me." Appellant's attorney is alleged to have told the judge that his client was reluctant to plead to the reduced count of robbery in the second degree because he feared a sentence of 15 to 30 years. (In New York, mandatory sentence as a second or third felony offender for second degree robbery is 7½ to 30 years, while the mandatory sentence as a second or third offender is 15

to 60 years for first degree robbery. N.Y. Penal Law §§ 2125, 2127, 1941.) "The judge shook his head, indicating negation as to this, and told my attorney that anyone who pleaded guilty before him automatically received consideration." Appellant contends that he thereupon requested a postponement in order to consider the alternative of pleading guilty, but that upon the judge's refusal "I felt compelled to yield." The judge is then said to have admonished the appellant: "When you return to the courtroom, I am going to ask you whether any promise was made to you, you are to answer, 'no.' Is that understood?" to which the appellant responded in the affirmative.

The State's version of the conference in the trial judge's chambers differs in certain material respects from that of the appellant and his trial attorney. The State relies upon stenographic transcripts of the proceedings in chambers as well as in the courtroom when the plea was formally entered. The transcript of the conference in chambers reveals that at the outset, the trial judge stated that "if you want a trial, you will certainly get a fair trial." But he noted that the likelihood of appellant's acquittal was "not too good," and that if he was convicted he would be entitled to no consideration from the judge who "might have to send you away for the rest of your life." The judge constantly reiterated that he was making "no promises as to your sentence," and that "You have a very able counsel here, one of the best. I am not telling you what you should do or what you should not do. I am merely pointing out to you what you face." He stated that only the accused knew whether or not he was responsible for the crimes charged, and that the decision to proceed to trial, guaranteed to be a fair trial, was with the defendant alone. Appellant was reminded that a plea to robbery in the second degree would offer the appellant "some opportunity of receiving a shorter sentence * * *. If I sentence you after a conviction of robbery in the first degree, you

are going to be away until you are an old man. But I emphasize that I am not telling you what to do, son." The transcript reveals that appellant's trial attorney was fully in sympathy with the views of the trial judge:

"The Court: * * * From what I have heard about this case, this is a very serious crime. The defendant must consider that in relation to his chances which are—

"Mr. George: I know he hasn't any, Judge.

"The Court: If he is convicted, I am faced with a mandatory first-degree robbery as a second offender.

"Mr. George: Your hands are tied. Your hands are tied at 15."

The transcript reveals that appellant thereupon agreed to enter a guilty plea to the lesser degree, and his counsel concurred in the decision; before returning to the courtroom, the trial judge directed appellant to answer in the affirmative when asked whether or not he wished to plead guilty.

Petitioner's allegations challenge the authenticity of the State's transcript of proceedings of the conference in chambers. Indeed, his papers raise the claim that no minutes of the conference were ever taken, for the judge immediately noted that it was to be "off the record." He also contends that, even if the minutes were taken, they were apparently not transcribed until six years later, and that the transcribing stenographer might well have been different from the reporter present in the judge's chambers, thus accounting for errors or inconsistencies in the transcript. Moreover, petitioner's version of the conference, which in itself calls the transcript into question, was sworn to by his trial attorney in an affidavit incorporated in his application papers.

Petitioner does not dispute the accuracy of the transcript of the proceedings which took place subsequently in the courtroom, when he formally entered his guilty plea. This reveals that he responded affirmatively when the judge

asked: "And do you realize further that no promise has been made to you, your attorney, or anyone else in your behalf concerning any sentence or punishment that might be meted out to you should such plea be accepted by me from you?" Petitioner does, however, state in his application that "I regarded the questioning as 'window dressing.' I trusted implicitly in the Judge's assurance given in chambers that I would be given 'consideration'." Nonetheless the record discloses that on at least four occasions, appellant was apprised by the judge in open court that the consequence of a guilty plea would be his "going away for a long time" in prison.

Two and a half months later, the court imposed a sentence of 29 to 30 years imprisonment; in imposing a sentence just short of the statutory maximum, the trial judge made known that he was clearly influenced by the appellant's most unsavory criminal record which was before him on sentencing in a probation report and unknown to him at the time he accepted appellant's plea.[1]

In passing upon appellant's application for a writ of habeas corpus, the court below examined only the papers submitted in support of and in opposition to the motion. He found that the stenographic transcript and records offered by the State "conclusively refute petitioner's contention that he was either threatened, promised, or overreached in the matter of the entry of his guilty plea," and therefore denied the application without a hearing. The petitioner's affidavits were rejected because not "convincing as a contradiction of the stenographic transcript," and because appel-

lant's failure to protest to the trial judge that the sentence imposed violated an implicit promise "indicates an afterthought on the part of the petitioner." At no time, therefore, either in the state or the federal court, has appellant received a hearing on the question of the authenticity of the stenographic transcript purporting to record accurately the conference held in chambers on November 17, 1953.

We therefore hold that the District Judge erred in disposing of appellant's application without a hearing as to the authenticity of the questioned stenographic transcript, and we remand for further proceedings consistent with this opinion.

It is clear that a conviction, whether in a state or federal court, based upon an involuntary plea of guilty—one induced by promises or threats—is inconsistent with due process of law. If the plea was the product of coercion, either mental or physical, or was "unfairly obtained or given through ignorance, fear or inadvertence," Kercheval v. United States, 274 U.S. 220, 224, 47 S. Ct. 582, 583, 71 L.Ed. 1009 (1927), the judgment of conviction which rests upon it is void and is subject to collateral attack on federal *habeas corpus.* See Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302 (1942); Walker v. Johnston, 312 U.S. 275, 61 S. Ct. 574, 85 L.Ed. 830 (1941); United States v. Tateo, 214 F.Supp. 560 (S.D. N.Y.1963).

When the petition in support of an application for *habeas corpus* re-

1. In the words of the trial judge, the appellant has "a long record, starting with misdemeanors." In 1945, apparently at the age of 15, he was charged in the Bronx with assault and battery, but the indictment had to be dismissed because the complainant was too badly beaten to testify against him. Soon after, he was charged with sodomy, burglary and robbery, but his plea of petit larceny was accepted and he was given a suspended sentence. In Queens in 1947, appellant, upon a plea of robbery in the third degree, was sentenced to Elmira Reception Center. After being involved in yet another offense, appellant was found guilty, in New Jersey, of armed robbery and sentenced to fifteen years in the state reformatory. He was paroled a year later, in 1949. In the instant case, the crime for which appellant was charged involved a completed robbery after which the victim was severely beaten by appellant with a loaded pistol and a bottle.

veals upon its face that it is defective as a matter of law, the habeas court may dismiss the application without a hearing. See 28 U.S.C. § 2243; Walker v. Johnston, 312 U.S. at 284, 61 S.Ct. at 578, 85 L.Ed. 830. Moreover, a hearing is not required when the habeas court has before it a full and uncontested record of state proceedings which furnishes all of the data necessary for a satisfactory determination of factual issues. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Machibroda v. United States, 368 U.S. at 494, 82 S.Ct. at 513–514, 7 L.Ed.2d 473; Walker v. Johnston, 312 U.S. at 284, 61 S.Ct. at 578, 85 L.Ed. 830; Grundler v. North Carolina, 283 F.2d 798 (4th Cir., 1960); United States ex rel. Wade v. Jackson, 256 F.2d 7 (2d Cir.), cert. denied, 357 U.S. 908, 78 S.Ct. 1152, 2 L.Ed.2d 1158 (1958). When, however, petitioner alleges that a guilty plea entered by him was the product of deceit, promise, or threat, and facts are specifically set forth which support that allegation and which create issues incapable of resolution by a simple examination of the files and records before the federal District Court, that court must grant the petitioner a hearing. Certainly, petitioner cannot be denied a hearing merely because the facts asserted by him are contradicted by the answer of the State's prosecuting officers, for it is this denial which creates the factual issue to be resolved. Commonwealth of Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 123, 76 S.Ct. 223, 100 L.Ed. 126 (1956); Reickauer v. Cunningham, 299 F.2d 170 (4th Cir.), cert. denied, 371 U.S. 866, 83 S.Ct. 127, 9 L.Ed.2d 103 (1962). Townsend v. Sain, 372 U.S. 293, 312, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963), sets out the basic principle: "Where the facts are in dispute, the federal court in *habeas corpus* must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding"; unless, of course, petitioner's allegations are "vague, conclusory, or palpably incredible", Machibroda v. United States, 368 U.S. at 495, 82 S.Ct. at 514, 7 L.Ed.2d 473, or are "patently frivolous or false," Commonwealth of Pennsylvania ex rel. Herman v. Claudy, 350 U.S. at 119, 76 S.Ct. at 225, 100 L. Ed. 126.

■ With these principles in mind, we are impelled to conclude that the District Court erred in denying the writ without a hearing. Petitioner's allegations contesting the accuracy of the transcript in question cannot, we believe, justly be found upon their face to be palpably incredible or patently frivolous. "There will always be marginal cases, and this case is not far from the line. But the specific and detailed factual assertions of the petitioner, while improbable, cannot at this juncture be said to be incredible." Machibroda v. United States, 368 U.S. at 496, 82 S.Ct. at 514–515, 7 L.Ed.2d 473. We fully agree with the court below that the transcript offered by the State is entitled to the greatest of weight. But it is also true that specific allegations of fraud or irregularity which call into dispute the accuracy of the record entitle the prisoner to a hearing. See Walker v. Johnston, 312 U.S. at 286, 61 S.Ct. at 579, 85 L.Ed. 830; Daniel v. United States, 107 U.S.App.D. C. 110, 274 F.2d 768 (1960), cert. denied, 366 U.S. 970, 81 S.Ct. 1935, 6 L.Ed.2d 1260 (1961); Smith v. United States, 216 F.2d 724 (5th Cir., 1954); Winhoven v. United States, 201 F.2d 174 (9th Cir., 1952); cf. Machibroda v. United States, 368 U.S. at 494–495, 82 S.Ct. at 513–514, 7 L.Ed.2d 473; Chessman v. Teets, 350 U.S. 3, 76 S.Ct. 34, 100 L.Ed. 4 (1955); Chavez v. Dickson, 280 F.2d 727, 737–738 (9th Cir., 1960), cert. denied, 364 U.S. 934, 81 S.Ct. 379, 5 L.Ed.2d 366 (1961). Petitioner has done more than merely set forth a version of the facts contradictory to that offered by the State; he alleges with specificity, as noted above, certain conditions which call into question the accuracy and indeed the authenticity of the transcript. He thus raises a triable issue which warrants a hearing.

We need comment but briefly on the observation of the District Court that petitioner's allegations were suspect on their face because of the lapse of more than six and a half years between the date of sentencing and the date of the *coram nobis* application to the state courts in which his version of the facts was first presented; he thought that this dilatoriness "indicates an afterthought." It is true that the lapse of time in petitioner's bringing this issue to light, in addition to his failure at the time of sentencing to protest that an implied promise had been broken by the trial judge and his failure to raise the issue of coercion on direct appeal from the state conviction, all cast some doubt upon the veracity of petitioner's allegations and would cast doubt upon his credibility were he to reiterate them at a hearing. But it has been consistently held that assertions of improbability or incredibility founded merely upon a delay in the assertion of a constitutional right, are not sufficient to deprive the petitioner of a hearing in the first instance on contested facts. See Machibroda v. United States, 368 U.S. at 495–496, 82 S.Ct. at 514–515, 7 L.Ed.2d 473; Walker v. Johnston, 312 U.S. at 287, 61 S.Ct. at 579, 85 L.Ed. 830. The mere passage of time does not deprive the petitioner of his right to challenge the constitutionality of his confinement by writ of *habeas corpus*. See United States ex rel. Wade v. Jackson, 256 F.2d 7, 10 (2d Cir.), cert. denied, 357 U.S. 908, 78 S.Ct. 1152, 2 L.Ed.2d 1158 (1958); Farnsworth v. United States, 98 U.S.App.D.C. 59, 232 F.2d 59, 62 A.L.R.2d 423 (1956); United States v. Morgan, 222 F.2d 673 (2d Cir., 1955); Haywood v. United States, 127 F.Supp. 485 (S.D.N.Y.1954).

We remand for a hearing because we cannot find as a matter of law that, even assuming petitioner's contentions to be true—i. e., that statements and gestures were made by the judge which are not reflected in the transcript—they are insufficient to establish that his guilty plea was coerced. These statements and gestures, if in fact made but not accurately recorded, may be considered by the District Court in determining whether a threat or promise sufficient to make out a *prima facie* case of coercion [2] has been established.

For much the same reasons, we cannot adopt appellant's argument that a hearing is unnecessary and that the court below should be reversed and the prisoner discharged on the theory that the State's version of the facts establishes coercion as a matter of law. The stenographic transcript of the conference in chambers reveals that the trial judge informed appellant that if he chose to go to trial he would receive a fair one, that the chances of his being acquitted were "not too good," that if he was convicted he "might" have to be sent away for the rest of his life (appellant was 24 years old and the maximum sentence for robbery in the first degree, one of the four crimes charged, was in this case 60 years), and that if he entered a guilty plea to the lesser offense he would "have some opportunity of receiving a shorter sentence" through the judge's consideration for his desire to "start a new life" for himself. The trial judge stated that "I make you no promise as to your sentence * * *," and on some six occasions he emphasized that the decision as to whether or not to enter the guilty plea was completely in the hands of appellant and that he, the judge, was not telling him what to do. Appellant was at all times assisted by experienced counsel who in fact commended the judge for his fairness in considering the plea and who thanked the judge after the plea was entered and accepted in the courtroom.

2. See, e. g., United States v. Berry, 309 F.2d 311, 314 (7th Cir., 1962) (dictum); Shelton v. United States, 292 F.2d 346 (7th Cir., 1961), cert. denied, 369 U.S. 877, 82 S.Ct. 1149, 8 L.Ed.2d 280 (1962); Hassell v. United States, 287 F.2d 646 (9th Cir., 1961); Heideman v. United States, 281 F.2d 805 (8th Cir., 1960); Euziere v. United States, 249 F.2d 293 (10th Cir., 1957); United States v. Lias, 173 F.2d 685 (4th Cir., 1949); United States v. Tateo, 214 F.Supp. 560 (S.D. N.Y.1963).

The record shows that while entering his plea, the appellant acknowledged that no promises had been made to induce him to so plead; this is evidential on the issue of voluntariness, although not conclusive, see United States v. Tateo, 214 F.Supp. 560, 564 (S.D.N.Y.1963). It is corroborated by the judge's statement in open court, on some four occasions, that the prisoner's guilty plea would expose him to a long term of imprisonment.

■ We cannot say that as a matter of law the only reasonable inference which the cold transcript supports is one of involuntariness in the entering of the guilty plea.[3] The mere explanation to the prisoner of the alternatives before him cannot be viewed as improper coercion on the part of the judge; any coercion sensed by the prisoner may well have emanated from the realities of the situation, wholly apart from what happened in chambers. The appellant's predicament—the grave risk of the mandatory higher sentence for the recidivist convicted of first degree robbery—had on several occasions been explained to him by his attorney, and the consequences of conviction on this offense could largely have been deduced from a simple examination of the relevant sections of the penal code. We read the judge's remarks not as an enticement or threat by means of a prior commitment by the judge to the prisoner's sentence, but as merely a fair description of the consequences attendant upon the prisoner's choice of plea, a description which was manifestly essential to an informed decision on the part of the prisoner. See, e. g., Long v. United States, 290 F.2d 606 (9th Cir., 1961); Jones v. United States, 279 F.2d 652 (9th Cir.), cert.

denied, 364 U.S. 875, 81 S.Ct. 120, 5 L. Ed.2d 97 (1960); Brown v. Smyth, 271 F.2d 227 (4th Cir., 1959); Decatur v. Hiatt, 184 F.2d 719 (5th Cir., 1950); Diggs v. Welch, 80 U.S.App.D.C. 5, 148 F.2d 667, 670 (concurring opinion), cert. denied, 325 U.S. 889, 65 S.Ct. 1576, 89 L.Ed. 2002 (1945); United States v. Tateo, 214 F.Supp. at 567 (dictum); United States v. Monti, 100 F.Supp. 209 (E.D.N.Y.1951). The District Court, after a hearing, may well conclude that the appellant and his trial attorney had a hope or expectation that a lighter sentence would be imposed; but it is well settled that a mere disappointed expectation of leniency, as opposed to an understanding with the trial judge, is not sufficient cause to vitiate a plea. See Futterman v. United States, 91 U.S.App. D.C. 331, 202 F.2d 185 (1952); United States v. Lowe, 173 F.2d 346 (2d Cir.), cert. denied, 337 U.S. 944, 69 S.Ct. 1499, 93 L.Ed. 1747 (1949); Monroe v. Huff, 79 U.S.App.D.C. 246, 145 F.2d 249 (1944). A hearing, at which time the habeas court may call the participants to the conference in chambers—the appellant, his attorney, the district attorney, the trial judge, if necessary, the court stenographer and other officers—may well unearth facts as to the surrounding circumstances and unrecorded comments or gestures which point to an opposite conclusion. We are mindful that time dulls the memory of some and ignites the fancy of others. How this will affect the case presented by the appellant, who has the burden of proof at the hearing, Walker v. Johnston, 312 U.S. at 286, 61 S.Ct. at 579, 85 L.Ed. 830; Johnson v. Zerbst, 304 U.S. 458, 468–469, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), is for the District Court to decide.

3. A portion of the transcript is quoted in the dissenting opinion in order to convey the "tone" of the conference in chambers, a "tone" which Judge Marshall believes to be preeminently coercive or oppressive. As we view the transcript, however, it is far more consonant with a view of the trial judge as one who is not stern, over-eager, or overbearing, determined to intimidate the defendant into pleading guilty (compare Euziere v. United States and United States v. Tateo, cited in support of the dissenting opinion), but rather of a seasoned and able judge sympathetic with the dilemma in which the defendant found himself and interested in seeing that the defendant fully understood precisely what faced both him and the judge in light of the realities of the situation.

Cases of the type before us place great burdens upon the already strained trial and appellate machinery of the federal courts. State cases of ancient vintage, with prosecution witnesses frequently inaccessible of mind or body, are presently being reviewed by the federal judiciary and returned to the state courts for new trials because of a failure of "due process" in the original proceedings. This can only cause frustration to the trial judge, the prosecutor and indeed to the federal district judge. But this frustration cannot justify ignoring the mandate given us by the Supreme Court, particularly in the recent cases of Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), and Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), to reexamine these cases where proper and to bring them to hearing if the petitioner's allegations and the record require a thorough inquiry as to the merit of his charges. I do not, however, share with my brother Friendly a concern for what he predicts will be an opening of the floodgates for prisoners' petitions as a result of our holding today. For we shall still assume that the District Court will view with a jaundiced eye any mere allegation, without more, that stenographic minutes of a proceeding are inaccurate; we do not hesitate to hold that this by itself is insufficient to necessitate a hearing. It is simply that the unusual circumstances presented by this case raise—only by the barest of margins —a triable issue which warrants what may well be *sui generis* treatment.

We are grateful to Robert V. Zener, Esq., who, as assigned counsel for appellant, has most ably and conscientiously represented him in the preparation and presentation of this appeal.

We therefore reverse and remand for a hearing.

FRIENDLY, Circuit Judge (concurring and dissenting).

Perhaps, in order to avoid a later claim of coercion and consequent denial of due process, a judge would be wiser to abstain from any conversation about a guilty plea with a criminal defendant awaiting trial before him—even when, as here, the judge is acting in what he soundly considers the defendant's best interest and in line with the recommendations of experienced defense counsel, and the result of abstention is likely to be a heavier sentence for the defendant whose rights the due process clause aims to protect. However, no one contends that such a conversation by a judge is a *per se* denial of due process; decision turns on what was said and its probable effect. A reviewing court must not impose on a hard-pressed *nisi prius* judge, speaking extemporaneously to a criminal defendant, a standard of precise and balanced expression not always realized even in opinions which appellate judges have had ample opportunity to revise. We must look not to isolated phrases but to the general tenor. As Judge Weinfeld said in United States v. Tateo, 214 F.Supp. 560, 565 (S.D.N.Y.1963), cited by my brother MARSHALL, the issue is the state of the defendant's mind and that "is to be decided by the trier of the fact, whether court or jury, just as any other fact issue—the reasonable inferences to be drawn from all the surrounding facts and circumstances." Where, as here, this issue of fact has been tried to a district judge, his findings—in the absence of any indication that he applied erroneous substantive or procedural standards—are entitled to the benefit of the "unless clearly erroneous rule" of F.R.Civ.Proc. 52(a). United States ex rel. Crump v. Sain, 295 F.2d 699 (7 Cir., 1961), cert. denied, 369 U.S. 830, 82 S.Ct. 845, 7 L.Ed. 2d 794 (1962), and cases cited. It is true that insofar as this rule rests on the trier's observation of the witnesses and findings of credibility consequent upon that, its force is diminished where there was no hearing and both trial and appellate courts proceed on written records. But the rule may not be wholly disregarded in such a case; it "applies also to factual inferences from undisputed basic facts." C. I. R. v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 1200, 4 L.Ed.2d 949 (1960).

The conference in Judge Groat's chambers was devoted to the objective, admittedly beneficent, of exploring whether McGrath's interests would be better served by standing trial on an indictment for first degree robbery or pleading guilty to second degree robbery. There was surely no impropriety in his being advised of the different ranges of minimum and maximum sentence for the two crimes, of which, indeed, he seems already to have been made well aware by his trial counsel. Where the state judge is claimed to have strayed beyond permissible bounds was in saying, at various times, that if McGrath were convicted of first degree robbery, "I might have to send you away for the rest of your life," "you will be entitled to no consideration of any kind from me," you are going to be away "until you are an old man" or "for a long time," and "there can be no consideration." No doubt it would have been well if Judge Groat had inserted more of the qualifications that we judges love—even though the qualified statement might in fact have been less accurate than the unqualified one. But in determining whether the district judge erred in finding that these statements had not overawed McGrath, we must consider the background and the context. The background was a first degree robbery that had missed being a felony murder only by the good fortune of the victim's surviving a violent attack.[1] If McGrath, a multiple offender, were convicted by a jury of that crime,

why should he have been entitled to "consideration," and why would a sentencing judge not feel required to approach the maximum? The context is the judge's repeated emphasis that the decision as to a plea was for McGrath to make, in the light of what he knew of his own conduct and of the People's evidence against him. As conceded in McGrath's own affidavit, he had told his counsel, even before entering the court room, that he was willing to plead guilty to second degree robbery if counsel could get a written commitment as to the sentence; the issue remaining for discussion in chambers was whether he would do this without one. Doubtless McGrath hoped that by pleading guilty to second degree robbery he would receive a sentence less than the maximum, but he and his counsel knew full well that their only assurance was that he was avoiding a mandatory minimum sentence of 15 years and a permissible maximum of 60. At the sentencing, two and a half months later, the judge stated with obvious sincerity, that when McGrath was first before him, he "was still not familiar with all the details," and that when he ascertained the full extent of McGrath's vicious record, summarized in footnote 1 to my brother KAUFMAN'S opinion, and learned more about the crime itself, his conscience would not permit him to go materially below the statutory maximum for the lesser offense to which, to his expressed regret, he had allowed McGrath to plead.[2] For us to turn a man

1. In the transcript of the proceedings on sentence, the accuracy of which is unchallenged, Judge Groat said, without contradiction, that McGrath was "very lucky that he is not here charged with murder in the first degree" and that the victim was "almost killed."

2. The following excerpt from the transcript merits quotation:
"The Court: No sentence, with probably the exception of one, has caused this Court more concern—concern because of the youth of the defendant and concern for what my duty is to society, to the People of this County. When this was originally up for trial, you will remember that I spoke to you and we both spoke to this defendant. If there ever was a first

degree robbery case, this is it. You will agree with me on that.
"Mr. George: I have no doubts as to that, Judge.
"The Court: There was no question whatsoever that the defendant would be convicted. I was still not familiar with all the details; and I say to you quite honestly now that had I known all the details and the fact that this boy is very lucky that he is not here charged with murder in the first degree, I doubt whether I would have taken the plea I did. But be that as it may, through your efforts, Mr. George—
"Mr. George: Thank you, your Honor.
"The Court:—and through the Court's soft-headedness or soft-heartedness—I

with McGrath's record loose on society under these circumstances, after he has served only a little more than the minimum mandatory sentence for the lesser offense—unless the People were now able to prove the commission of the brutal robbery as they were prepared to do ten years ago—would be, in my view and with all deference to my brother Marshall, an abuse of federal *habeas corpus* and the great principles that it serves.

As I read my brother KAUFMAN'S opinion, he and I would agree that if it was proper for Judge Brennan not to go beyond the transcript of the proceedings before the state judge, the denial of McGrath's petition should be affirmed. But I disagree with his holding that an evidentiary hearing was required in this case, where we have the good fortune to possess a transcript fair on its face and certified "to be an accurate transcript of this proceeding" by the Official Court Reporter. McGrath's applications, both in state *coram nobis* and federal *habeas corpus*, admit that the stenographer was present at the conference in Judge Groat's chambers. What is now characterized as a challenge by McGrath to the authenticity of the transcript is a statement, made initially in his state *coram nobis* affidavit seven years after the event, and repeated in his *habeas corpus* application, that the judge said the conference was "strictly off the record," whereas the transcript reports the judge as beginning the conference in chambers only by saying "Let the record show there is no jury here. It is in chambers." The alleged corroboration of this "challenge" by McGrath's trial attorney consists of a seven-line affidavit, in the form generally used to verify New York pleadings, "That he has read the affidavit of John McGrath and that to your deponent's knowledge the attached affidavit is

true except as to those allegations mentioned upon information and belief and to those he believes them to be true"; as McGrath's *habeas corpus* affidavit tells us, he himself had prepared this form and sent it to the lawyer who had agreed in advance to sign it. Since McGrath's *coram nobis* affidavit had in fact not challenged the authenticity of the transcript, of whose existence he apparently was not aware until the People filed it in response to his petition, the attorney's *jurat* likewise did not. Moreover, McGrath's own version of what occurred in Judge Groat's chambers in 1953 reinforces rather than rebuts the presumption of regularity to which the transcript is entitled. Apart from naturally being more abbreviated, it differs chiefly in making the judge's remarks somewhat more colorful in two instances and in including a supposedly tell-tale shake of the judge's head "when my Attorney mention 15 to 30 years." Assuming in McGrath's favor that this assertion as to the shaking of the judge's head in 1953 should go unchallenged at a hearing ten years later, I cannot imagine that any trier of the facts would give it the slightest effect when the transcript records no such episode as is alleged to have occasioned the shake.[3] "Where * * * testimony is in conflict with contemporaneous documents we can give it little weight * * *." United States v. United States Gypsum Co., 333 U.S. 364, 396, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

Recent decisions of the Supreme Court have expanded the substantive grounds on which state prisoners may seek federal *habeas corpus*, Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), overruling Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949); Gideon v. Wainwright, 372 U.S.

---

don't know which—a plea of robbery in the second degree was accepted from the defendant, knowing what I would face had it been the first degree. I have exhausted my conscience. I have talked to people. I have searched the record and I have examined the conviction record of this boy."

3. The closest approach is the judge's remark, "I make you no promises as to your sentence, but I will give you every consideration if you are truthful and there is an indication that you want to start a new life for yourself."

318

335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), overruling Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1252 (1942); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963); Ker v. California, 373 U.S. ——, 83 S.Ct. 1623 (1963). Other decisions have eliminated conditions requiring previous compliance with state appellate procedures very largely, and prior application to the Supreme Court for certiorari entirely, Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), overruling Daniels v. Allen, 344 U.S. 443, 482–487, 73 S.Ct. 437, 97 L.Ed. 469 (1953) implicitly and Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761 (1950) explicitly. The writer's opinion in United States ex rel. LaNear v. La Vallee, 306 F.2d 417 (2 Cir., 1962), cleared the way for a prisoner, sentenced under New York's multiple offender law, to challenge the constitutional validity of a prior out-state conviction, used by New York as a basis for increased sentence, without taking proceedings in the sister state. These decisions render it inevitable that the federal courts in districts where state prisons are located will be inundated by *habeas corpus* applications. Since the decisions were not stated to have only prospective effect, the tide will rise to flood proportions during the next few years when many hundreds of prisoners, convicted over scores of years, whose way to federal *habeas corpus* had seemed barred on substantive or procedural grounds, or even had been held to be, will be simultaneously pressing for relief. Until the pressure is eased, on a short term basis, by Congressional provision for more judges and supporting personnel in these districts or otherwise, and, ultimately, by the raising of state standards of criminal procedure to the level of due process set by the Supreme Court, the handling of this wave of litigation in such a way that the sheer mass of *habeas corpus* applications will not prevent the effective disposition of the meritorious ones, see Mr. Justice Jackson concurring in Brown

v. Allen, 344 U.S. 443, 537, 73 S.Ct. 397, 97 L.Ed. 469 (1953); Mr. Justice Clark dissenting in Fay v. Noia, supra, 372 U.S. at 445–446, 83 S.Ct. at 852–853, 9 L.Ed.2d 837, and impair the rights of other federal suitors, constitutes a new and major problem in the administration of federal justice.

The problem must largely be handled, as the Supreme Court has said, "on the front line, by the district judges who are conscious of their paramount responsibility in this area", Townsend v. Sain, 372 U.S. 293, 319, 83 S.Ct. 745, 760, 9 L.Ed.2d 770 (1963),—in New York, more particularly, by the judges for the Northern and Western Districts on whom, because of the location of the state prisons, a disproportionate share of the burden falls. The courts of appeals should not make the already hard task of these judges harder by a perfectionist attitude that would require evidentiary hearings in cases where no substantial reason has been advanced for holding one. Not only would "the too promiscuous grant of evidentiary hearings * * * swamp the dockets of the District Courts and cause acute and unnecessary friction with state organs of criminal justice," Townsend v. Sain, supra, 372 U.S. at 319, 83 S.Ct. at 760, 9 L.Ed.2d 770, it would also defeat the high purposes of the Supreme Court by relegating the occasional worthy applicant to a remote position in the queue. There is a limit to what federal district judges can do; to the extent that their time is taken up by useless hearings on applications by state prisoners, useful ones and other pressing business of the court will have to wait. Here as in other matters, the best can become the enemy of the good. McGrath has made no sufficient showing to require that one of the two judges of the Northern District of New York spend a day or two of his busy life in taking the testimony of the state judge, the prosecutor, McGrath's trial counsel, and the court stenographer, to determine that what the Official Court Reporter certified to be "an accurate transcript" of the proceeding in the judge's chambers was what it

purports to be. I see no unusual circumstances in McGrath's case to warrant *sui generis* treatment in his favor.

I would therefore affirm Judge Brennan's denial of the writ. However, since my views on the ultimate merits are closer to Judge KAUFMAN's than to Judge MARSHALL's, I join with the former in reversing for a hearing, simply in order that some disposition can be made.

MARSHALL, Circuit Judge (dissenting).

Disagreement with my brothers goes to the result reached. The remand ordered by the majority is for the purpose of determining "the authenticity of the questioned stenographic transcript." [1] The questioned transcript was introduced by the State, which rested its case upon it. If it is sufficient to support appellant's claim, it justifies granting his prayer that he "be discharged from custody." Certainly the State is not entitled to a new hearing as to the authenticity of a transcript which it itself introduced. Appellant's challenge to the validity of the transcript was a plea for alternative relief, if the transcript was insufficient. Therefore, the controlling question is whether or not "the cold transcript" is sufficient to support appellant's claim. In my view it clearly is.

The opinion of Judge KAUFMAN holds that the transcript of the proceedings in chambers does not provide grounds for invalidating the plea of guilty to robbery in the second degree because the trial judge did no more than explain to the defendant the realities of the situation in which he faced a choice between pleading guilty to the lesser offense or standing trial for robbery in the first degree. Of the cases cited in that opinion, only one involved any participation by the trial judge. The opinion in Futterman v. United States, 91 U.S.App.D.C. 331, 202 F.2d 185, 186 (1952) mentions that appellants were advised by their attorneys "as well as by the court concerning the charges against them." The other cases involved alleged bad advice by defense counsel, and/or promises or threats by prosecuting attorneys or government agents. None comes even close to this case. Here appellant's attorney not only carefully advised him of all the possibilities but also urged him to take the lesser plea. Appellant consistently refused and insisted on going to trial. This was the situation when the case was called. Shortly thereafter, appellant agreed to plead guilty to the lesser offense. What intervened in the meantime? The conference held in chambers at the request of the judge was the only intervening event.

We are not here concerned with allegations that the defendant was given bad advice by his own attorney or was made promises by the prosecuting attorney. The former are usually considered inadequate to raise a due process question because "[i]f that were sufficient to show that his plea was not intelligently made few, if any, convictions and sentences on pleas of guilty would be valid." Monroe v. Huff, 79 U.S.App.D.C. 246, 145 F.2d 249 (1944). The latter are usually considered inadequate "for the defendant must be supposed to know, if he is experienced, or to be advised, if he has counsel, that such a promise is in no way binding upon the court and ought not to affect the prisoner's judgment in pleading." United States ex rel. Wissenfeld v. Wilkins, 281 F.2d 707, 712 (2 Cir., 1960). Cf. Shelton v. United States, 242 F.2d 101 (5 Cir.), rev'd en banc, 246 F.2d 571 (1957), rev'd on confession of error, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958). See Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed. 2d 473 (1962). Our concept of due process must draw a distinct line between, on the one hand, advice from and "bargaining" between defense and prosecuting attorneys and, on the other hand, discussions by judges who are ultimately to determine the length of sentence to be imposed. This is especially true when, as here, the conference in chambers is or-

---

1. See the opinion of Judge Kaufman, supra, 319 F.2d at 311.

dered by the judge himself without any apparent request by either defendant or prosecutor.

The safeguard of procedural due process remains adequate only so long as it is "inexorable." St. Joseph Stock Yards Co. v. United States, 298 U.S. 38, 73, 56 S.C. 720, 80 L.Ed. 1033 (1936) (Brandeis, J., concurring). A plea of guilty in lieu of a full trial with all of the due process safeguards is itself protected by the Due Process Clause and by federal and state statutes. On the question of the ability of the defendant to enter a guilty plea without the assistance of counsel, Mr. Justice Frankfurter, in a separate opinion in Von Moltke v. Gillies, 332 U.S. 708, 729, 68 S.Ct. 316, 325–326, 92 L.Ed. 309 (1948), clearly set forth the basic due process requirements:

> "There must be both the capacity to make an understanding choice and an absence of subverting factors so that the choice is clearly free and responsible. If the choice is beclouded, whether by duress or by misleading advice, however honestly offered by a member of the prosecution, a plea of guilty accepted without more than what this record discloses can hardly be called a refusal to put the inner feeling of innocence to the fair test of the law with intelligent awareness of consequences."

In order to apply these principles to the present case, it is necessary to have an understanding of the tone which the trial judge set at the proceedings which he held in his chambers:

> "The Court: Let the record show there is no jury here. It is in chambers.
>
> "They tell me that this boy was caught by an off-duty policeman. He has a long record.
>
> "Mr. George [defendant's attorney]: That's right.
>
> "The Court: Do you realize what is happening? Do you realize the sentence you might have to face as a second offender in a first-degree rob-

bery? That is one of the reasons I am talking to you now. I do not like to give long, long sentences.

> "Mr. George: I have advised him, Judge.
>
> "The Defendant: Yes, sir.
>
> "Mr. George: 15 and 16 years as a first—
>
> "The Court: I advise you to think it over. If you are convicted, I might have to send you away for the rest of your life.
>
> "As I see it, the likelihood of your being acquitted is not too good. Of course, if you want a trial, you will certainly get a fair trial. But you must remember this: If you are convicted as a second offender of robbery in the first degree, you will be entitled to no consideration of any kind from me."

The conclusion of the proceeding is equally illuminating:

> "The Court: If there is a conviction of robbery in the first degree, then there can be no consideration.
>
> "What do you want to do, son?
>
> "The Defendant: I will take it.
>
> "Mr. George: We will accept the plea.
>
> "The Court: Son, if this is what you want to do, when we return to the courtroom and I question you concerning your plea, you must answer categorically. That means, when I ask you if you plead guilty, you must say yes.
>
> "The Defendant: Yes."

In a long line of cases from Brown v. State of Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936) to Haynes v. Washington, 373 U.S. p. 503, 83 S.Ct. 1336, the Supreme Court has expressly and repeatedly declared that the innocence or guilt of the accused is irrelevant to the determination of whether or not a conviction squares with the requirements of due process.

> "Indeed, in many of the cases in which the command of the Due Proc-

ess Clause has compelled us to reverse state convictions involving the use of confessions obtained by impermissible methods, independent corroborating evidence left little doubt of the truth of what the defendant had confessed. Despite such verification, confessions were found to be the product of constitutionally impermissible methods in their inducement." Rogers v. Richmond, 365 U.S. 534, 541, 81 S.Ct. 735, 739–740, 5 L.Ed.2d 760 (1961).

It is likewise clear that a conviction on a coerced plea of guilty is no more consistent with due process than a conviction supported by a coerced confession. Waley v. Johnston, 316 U.S. 101, 104, 62 S. Ct. 964, 86 L.Ed. 1302 (1942). For, the "aim of the requirement of due process is not to exclude presumptively false evidence, but to prevent fundamental unfairness in the use of evidence, whether true or false." Lisenba v. California, 314 U.S. 219, 236, 62 S.Ct. 280, 289–290, 86 L.Ed. 166 (1941).[2]

In this case the trial judge *qua* judge told the appellant that he had "a long record." "As I see it, the likelihood of your being acquitted is not too good."[3] "The District Attorney has told me that, in his opinion, he has many witnesses who can prove his case." "Considering your record and the case, only you can decide whether you wish to go to trial in the indictment of robbery in the first degree before a jury. As I said, if the District Attorney proves the case as he has outlined, the likelihood of your being acquitted is not good."

Against this background of judicial pre-judgment, see United States v. Campbell, 316 F.2d 7, 9 (4 Cir., 1963), the trial judge made it clear that upon conviction of robbery in the first degree appellant would "be entitled to no consideration of any kind from me" and "[i]f I sentence you after a conviction of robbery in the first degree, you are going to be away until you are an old man." At the same time the trial judge advised the appellant, "On the other hand, a very, very fair plea is being offered by the District Attorney" and promised, "I make no promises as to your sentence, but I will give you every consideration if you are truthful and there is an indication that you want to start a new life for yourself." In order that the full purport of the proceedings in chambers may be grasped, the entire transcript of the proceedings is attached hereto as an appendix.

New York law requires that a plea of guilty "can only be put in by the defendant himself in open court." N.Y.Code of Crim.Proc. § 335. At the conclusion of the proceedings in chambers the trial judge said, "Son, if this is what you want to do, when we return to the courtroom and I question you concerning your plea, you must answer categorically. That means, when I ask you if you plead guilty, you must say yes." This direction foreclosed the usual open court investigation as to the voluntariness of a plea of guilty. The resulting formal answers which the defendant then gave to the questions which he was asked in open court thus provide little if any support to the argument that his plea was not coerced. See Haley, v. Ohio, 332 U.S. 596, 601, 68 S.Ct. 302, 92 L.Ed. 224 (1948) and Haynes v. Washington, 373 U.S. p. 503, 83 S.Ct. 1336.

Judge KAUFMAN's opinion accurately states the basic rule that if a plea of guilty was the product of coercion, either mental or physical, or was unfairly obtained or given through ignorance, fear or inadvertence, the judgment which rests upon it is void and is subject to attack by *habeas corpus*. As one of the controlling cases states, "Fundamental

2. See Kadwell v. United States, 315 F.2d 667, 671 (9 Cir., 1963).

3. There is nothing in the record to show how or where the judge obtained this information before the trial. Regardless of this, the appellant was given the impression that the judge who was to try the case was already convinced that he would be convicted of first degree robbery.

standards of procedure in criminal cases require that a plea of guilty to the charge or charges contained in an indictment or information be entered freely, voluntarily, *and without any semblance of coercion.*" Euziere v. United States, 249 F. 2d 293, 294–295 (10 Cir., 1957) (emphasis added). In Euziere a lower court order denying a motion to vacate a judgment of conviction was reversed because the trial judge accepted a plea of guilty by a defendant after he had threatened to give the defendant the maximum sentence if he did not plead guilty because he would have "put the government to the expense of a trial when [he was] guilty." 249 F.2d at 294. The Court of Appeals concluded, "We think it is clear that the statements made by the trial court were reasonably calculated to influence the defendants to the point of coercion into entering their pleas of guilty." Id. at 295.

In United States v. Tateo, 214 F.Supp. 560 (S.D.N.Y.1963) a judgment of conviction based upon a guilty plea was vacated because the trial judge, during a trial for bank robbery and kidnapping, threatened to impose a life sentence and other sentences to run consecutively if the defendant insisted upon continuing the trial to conclusion and was found guilty. The opinion of Judge Weinfeld, 214 F.Supp. at 564, 566–567, accurately restates the applicable law:

> "To further confine the issue, some preliminary observations are in order. The defendant's guilt or innocence is not in issue on this motion. And neither the passage of time nor the absence of any showing that in the event of a new trial a different result is likely requires the denial of the defendant's motion. Moreover, the fact that the defendant in open court at the time of the entry of the plea stated that it was not coerced, while evidential on the issue, does not foreclose inquiry as to its voluntariness.

> \* \* \* \* \* \*

> "We are not here concerned with a situation much·debated among the Courts of Appeals, in which some statement, activity, promise or threat of the prosecution has allegedly vitiated the voluntariness of a plea of guilty. Nor is this a situation where a defendant and his lawyer accept the realities of fact as developed during the progress of a trial, recognize the force of the Government's case, consult with one another and then the defendant makes a deliberate and measured choice. In such circumstances a defendant and his attorney act upon their appraisal of the evidence and the defendant makes his choice accordingly. Whatever his decision, whether to plead guilty or to continue with the trial, if found guilty the prospective sentence is an unknown quantity yet to be determined by the Trial Judge after an evaluation of all significant factors which normally are considered before sentence is imposed. In the instant case there is an added and distinguishing fact —the Court's announcement during the trial and in advance of a verdict of what sentence he would impose in the event of conviction."

In the instant case the trial judge by his statement in chambers added the element of compulsion which necessarily took from the defendant's subsequent guilty plea the voluntariness which our concept of due process requires that he possess. Whether these statements were made with or without the gestures alleged by appellant is immaterial.

I would therefore reverse and order the writ to issue.

## APPENDIX TO DISSENTING OPINION

Clerk of Court: People against Thomas McGrath; Salvatore M. George, counsel.

The Court: Good morning.

(The defendant was brought before the Court.)

Mr. Di Paola: People are ready.

Counsel is discussing the matter.

Mr. George: Defendant is ready, Judge.

The Court: Ready for trial. Do you realize what is happening?

Mr. George: I just finished explaining it to him, Judge. I believe, Judge—

The Court: You believe what? Come up here and tell me.

(Whereupon, there was an off-the-record discussion at the bench between the Court and Mr. George out of the hearing of the court reporter.)

The Court: Bring the defendant into chambers.

(Whereupon, the following ensued in chambers:)

The Court: Let the record show there is no jury here. It is in chambers.

They tell me that this boy was caught by an off-duty policeman. He has a long record.

Mr. George: That's right.

The Court: Do you realize what is happening? Do you realize the sentence you might have to face as a second offender in a first-degree robbery? That is one of the reasons I am talking to you now. I do not like to give long, long sentences.

Mr. George: I have advised him, Judge.

The Defendant: Yes, sir.

Mr. George: 15 and 16 years as a first—

The Court: I advise you to think it over. If you are convicted, I might have to send you away for the rest of your life.

As I see it, the likelihood of your being acquitted is not too good. Of course, if you want a trial, you will certainly get a fair trial. But you must remember this: If you are convicted as a second offender of robbery in the first degree, you will be entitled to no consideration of any kind from me.

The Defendant: Yes, sir.

The Court: On the other hand, a very, very fair plea is being offered by the District Attorney. He is willing to give you that plea if you go downstairs and tell the whole truth.

I make you no promises as to your sentence, but I will give you every consideration if you are truthful and there is an indication that you want to start a new life for yourself. Do you understand me?

The Defendant: Yes, sir.

The Court: You have to make up your mind, son, now. Once you are before the jury, you will be tried as indicted.

You have a very able counsel here, one of the best. I am not telling you what you should do or what you should not do. I am merely pointing out to you what you face.

The Defendant: Could you give me a chance to make up my mind?

The Court: I certainly will give you a chance to make up your mind, but this case is ready today, son. Both the District Attorney and your own lawyer have answered ready, and we are ready to proceed to trial today.

First of all, you have to make up your mind, asking yourself, "Did I do what is alleged in the indictment?" You and God know the answer to that question. The District Attorney has told me that, in his opinion, he has many witnesses who can prove his case. You, yourself, know whether you did it or not.

We are in chambers. There is no jury here. I repeat that you will receive a fair trial.

The decision is yours. You know whether or not you did what is claimed you did do. Considering your record and the case, only you can decide whether you wish to go to trial on the indictment of robbery in the first degree before a jury.

As I said, if the District Attorney proves the case as he has outlined, the likelihood of your being acquitted is not good. Or do you want to take a plea to

robbery in the second degree and have some opportunity of receiving a shorter sentence? If I sentence you after a conviction of robbery in the first degree, you are going to be away until you are an old man. But I emphasize that I am not telling you what to do, son.

Are you married?

The Defendant: No.

The Court: After considering your case very carefully, I find this is your chance to serve a shorter term. If you choose the other course and are convicted, you are going to be away for a long time. You know you are a second offender. But I reiterate that I am not telling you what to do.

Mr. George, I do not like to see a boy who is offered a plea such as this—

Mr. George: Judge, I have worked before your Honor on many occasions. I have been out here and I know the fairness of the Court.

The Court: This boy has been a bad boy. There is no question about that. From what I have heard about this case, this is a very serious crime. The defendant must consider that in relation to his chances which are—

Mr. George: I know he hasn't any, Judge.

The Court: If he is convicted, I am faced with a mandatory first-degree robbery as a second offender.

Mr. George: Your hands are tied. Your hands are tied at 15.

The Court: If there is a conviction of robbery in the first degree, then there can be no consideration.

What do you want to do, son?

The Defendant: I will take it.

Mr. George: We will accept the plea.

The Court: Son, if this is what you want to do, when we return to the courtroom and I question you concerning your plea, you must answer categorically. That means, when I ask you if you plead guilty, you must say yes.

The Defendant: Yes.